**In re M. Timothy WARD, Linda C. Ward, Debtors.**

**Bankruptcy No. 96–13566–DOT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 24, 1997.

James W. Reynolds, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Donald F. King, trustee.

Richard J. Stahl, Dixon, Smith & Stahl, Fairfax, VA, for debtors.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

A hearing was held in open court on May 20, 1997, on (a) the chapter 7 trustee's amended motion for turnover of property of the estate, and (b) the debtors' motion to compel return of exempt property. The issue raised by the competing motions appears to be one of first impression: specifically, is the trustee required to pay the debtors their exemption when the debtors have failed to turn over property of equal or greater value to the trustee?

The trustee argues that he is entitled to set off the exempt funds in his possession against the value of the property the debtors have failed to turn over. The debtors, on the other hand, take the position that the trustee has an absolute duty to pay them their exemption and must pursue other remedies with respect to the property in question. For the reasons stated in this opinion, the court concludes that the trustee is entitled to apply the $10,000 in exempt funds he is holding against the value of the funds the debtors have failed to turn over to him.

---

1. On March 24, 1997, the trustee filed Adversary Proceeding No. 97–1105, objecting to the discharge of the debtors. The allegations in the complaint include the omission of the personal property that is the subject of the present motion.

2. On their Schedule C the debtors listed a total of $7,651 in assets as being exempt under Va.Code Ann. § 34–4. On their original homestead deed, however, they listed only a $1 nominal value for

## Facts

The essential facts are not in dispute. The debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on July 9, 1996. The meeting of creditors was held on August 8, 1996. Robert O. Tyler, Esquire, had been appointed interim trustee, but subsequently resigned as trustee on November 14, 1996. The current trustee, Donald F. King, Esquire was appointed that same date.[1]

Among the property listed by the debtors on their schedules was a house at 7875 Kelly Ann Court, Fairfax Station, Virginia, valued at $500,000, and a "checking account," not further described, valued at $100. The debtors listed "None" in response to the question on Schedule B ("Personal Property") seeking information as to "Other liquidated debts owing debtor including tax refunds." On Schedule C ("Property Claimed Exempt") the debtors claimed the checking account as exempt under § 34–4, Code of Virginia in the amount of $100.00. They did not claim the house, or any portion of it, as exempt on their schedules. They did, however, list $1.00 of the value of the house as exempt on a homestead deed recorded on July 16, 1996, in the Clerk's Office of the Fairfax County Circuit Court.[2]

On July 14, 1996—five days after filing their bankruptcy petition—the debtors signed a contract to sell their house for $565,000. A subsequent modification of the contract reduced the sales price to $557,000. The chapter 7 trustee was substituted as seller and, after obtaining approval from this court, sold the property and is holding the proceeds of sale. On December 13, 1996, the debtors filed an amended homestead deed increasing the value of their exempt interest in the real estate to $10,000.[3] They also

---

each of the items claimed exempt, including the checking account.

3. The debtors did not amend their Schedule C to reflect that they were now claiming a portion of the value of the real estate as exempt, but the trustee has not objected to the exemption on this account. Nor has the trustee contested the debtor's right to amend their claim of exemptions upward within the limits of the Virginia home-

increased the exempt value of the checking account to $100.

The trustee learned that the debtors had filed tax returns in early August 1996 claiming Federal and Virginia income tax refunds for the tax year 1995 in the aggregate amount of $2,306. On April 3, 1997, the trustee filed his original motion for turnover of property in which he sought turnover only of the tax refunds. The debtors filed a response on April 18, 1996, in which they agreed that the trustee was entitled to the value of the tax refunds but asserted that the trustee "effectively had possession" of that amount since he was holding $10,000 owed to the debtors as their exempt portion of the real estate sales proceeds. The debtors filed a motion that same date to compel the trustee to turn over the balance of the $10,000 after setoff of the amount of the tax refunds.

At some point, the trustee learned that the debtors, at the time they filed their petition, had not one but two checking accounts, and that the total balance in the accounts, as of close of business on the day the petition was filed, was not $100 but $8,998.77.[4] On April 3, 1997, the trustee filed an amended motion to compel turnover of the $8,997.77 in the bank accounts in addition to the $2,306 in tax refunds, for a total of $11,304.77.

The trustee does not dispute that the debtors are entitled to a $10,000 aggregate homestead exemption under Va.Code Ann. § 34–4 from the proceeds of the sale of the real estate. The debtors have not been paid their homestead exemption, and the trustee is currently holding this amount in escrow. The trustee is seeking an order that would allow him to set off the debtor's homestead exemption of $10,000.00 against the $11,304.77 the debtors owe him, thus requiring the debtors to pay him the difference of $1,304.77. The debtors, notwithstanding their earlier plead-

ings in which they agreed that the trustee had the right to set off the income tax refunds against the exemption, have now changed their position and assert that they have an absolute right to the *full* value of their homestead exemption free from any setoff.

### Conclusions of Law and Discussion

#### A.

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge, subject to the right of appeal under 28 U.S.C. § 158.

#### B.

Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal and equitable interests of the debtor in property, "wherever located and by whomever held." Under § 522(b), Bankruptcy Code, an individual debtor may "exempt from property of the estate"—and thus hold free from the claims of his creditors—either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (nonbankruptcy) Federal law. A state, however, may "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va.Code Ann. § 34–3.1. Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state

---

stead exemption. *In re Sherman,* 191 B.R. 654 (Bankr.E.D.Va.1995).

4. The debtors had two checking accounts at Crestar Bank. Account number 82169–8796 had a balance of $1,190.34 while account number 05700–7608 had a balance of $7,808.43. The debtor's counsel asserted in argument that checks had been written pre-petition for a substantial amount of the funds in the account, and that those checks simply had not cleared at the

time the petition was filed. No evidence was presented, however, in support of this assertion, and the debtors do not appear to dispute that the funds in the account on the filing date were technically property of the bankruptcy estate. The debtors in their response to the amended turnover motion state only that they "do not have" the tax refunds or the funds that were in the two checking accounts.

law and general Federal law. *In re Smith,* 45 B.R. 100 (Bankr.E.D.Va.1984).

■ Among the exemptions available to Virginia residents is the "homestead" exemption set forth at Va.Code Ann. § 34–4 *et seq.* Under the homestead exemption, a "householder"—defined as any resident of Virginia—may hold up to $5,000 of real or personal property exempt from creditor process arising out of a debt by filing for record an instrument known as a homestead deed in the Circuit Court of the city or county where the real property is located and, if personal property is claimed, where the debtor resides. Va.Code Ann. §§ 34–4, 34–6, 34–13, and 34–14. In bankruptcy, a husband and wife filing a joint petition may each claim a $5,000 exemption, for an aggregate of $10,-000. *Cheeseman v. Nachman,* 656 F.2d 60 (4th Cir.1981). An additional $500 exemption is allowed for each dependent supported by the householder. Va.Code Ann. § 34–4. A disabled veteran is entitled to a further $2,000 exemption. Va.Code Ann. § 34–4.1. In the present case, the trustee does not dispute that the debtors properly claimed, and are entitled to, a $10,000.00 homestead exemption in the proceeds from the sale of the real estate.

### C.

As noted above, the commencement of a bankruptcy case creates an estate composed of all legal and equitable interests of the debtor. § 541(a), Bankruptcy Code. Where property belonging to the bankruptcy estate is in the possession of an entity other than the trustee, such an entity has a statutory duty under § 542, Bankruptcy Code, to turn the property over to the trustee, with certain exceptions not relevant here. Section 542(a) states in relevant part:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

In the present case, the trustee has not waived his right to require that the tax refunds and the bank account balances be "delivered" to him. Indeed he has vigorously argued, once learning of existence of those assets, that they belong to the bankruptcy estate and should be turned over to him to administer for the benefit of the creditors.

■ The debtors do not contest that the tax refunds should have been turned over to the trustee. Nor do they contest that the funds in the bank account on the filing date were property of the estate, although it appears they would argue that some portion of those funds, at least, were not "spent" by them post-petition but were paid by the bank in the ordinary course of business when checks written pre-petition were presented post-petition.[5] In any event, for the purpose of the present motion it seems clear that the debtors had a duty to turn over to the trustee the tax refunds when they received them as well as any funds in the two checking accounts in excess of the $100 they claimed exempt.[6] The only question is the proper remedy for their failure to do so.

5. As noted above, the debtors presented no evidence in support of their counsel's representation that the bulk of the post-petition transfers from the checking accounts resulted from pre-petition checks being presented post-petition. Since the debtors have a statutory duty to account to the trustee, the court will assume, in the absence of evidence to the contrary, that any post-petition transfers from the account are attributable to the debtors. The court will leave for a case in which the issue is squarely presented the question of whether a debtor has an affirmative duty to notify his or her bank that a bankruptcy petition has been filed and to instruct the bank not to honor pre-petition checks. In the absence of such a duty, it is doubtful that a motion for turnover against the debtor would be the appropriate vehicle to recover the value of checks paid by the bank post-petition. Rather, the appropriate remedy would appear to an avoidance action against the payees under § 549, *Bankruptcy Code.*

6. The homestead deeds recorded by the debtors follow a form that has been obsolete for many years and that does not fully comply with the requirements of Va.Code Ann. § 34–14. In particular, the debtors' homestead deeds do not reflect whether they are claiming the additional $500 exemption allowed for each dependent, and

## D.

The debtors raise essentially two arguments for why the trustee should not be permitted to set off the debtors' homestead exemption against the amounts they owe the trustee. First, the debtors cite to *In re Hayes*, 119 B.R. 86 (Bankr.E.D.Va.1990) (Shelley, J.) for the proposition that they may not be denied their homestead exemption no matter how egregious their conduct. *Hayes*, however, is easily distinguishable from the present facts. In *Hayes*, the chapter 7 trustee sought to deny the debtor his homestead exemption based on a multitude of inaccuracies on his schedules and on his failure to disclose certain financial transactions occurring around the time he filed. *Id.* at 87. The court held that, notwithstanding the debtor's fraudulent conduct, he simply could not be denied his homestead exemption. *Id.* at 89. Instead, the court found that the debtor was entitled to his homestead exemption, leaving the trustee to other remedies such as objecting to the discharge of the debtor under § 727, Bankruptcy Code. *Id.*

The trustee in this case, however, unlike the trustee in *Hayes*, is not seeking to *deny* the debtors their exemption. Indeed, the trustee readily concedes that the debtors are entitled to their homestead exemption and is willing to credit the debtors with the full amount of that exemption. The trustee is simply unwilling to pay the exemption amount over to the debtors when they owe him a greater amount. The trustee argues, in effect, that allowing him to set off the debtor's turnover obligation against the homestead exemption gives full effect both to the exemption and to the debtor's duty to turn over, or account for, money of the estate they kept or spent post-petition.

The debtors, in reply, assert—although they have not actually offered any evidence on the point—that they no longer "have" the tax refunds or the money that was in the bank accounts, and that in literal terms there is therefore nothing that they can "deliver" to the trustee. At most, they argue, they have only a duty to "account" to the trustee, meaning that the trustee simply has a claim against them that is no different from any other kind of debt they might owe. They contend that under Va.Code Ann. § 34–5 exempt property is liable for only a very limited category of debts,[7] and that any debt they might owe the trustee does not fall within one of those categories. Specifically, they assert that whatever they owe the trustee does not represent a debt for alimony or child support or for the purchase price of the property claimed exempt.[8] The issue that must be resolved, therefore, is whether either the Bankruptcy Code or applicable state exemption law prohibits a creditor from exercising a right of setoff against exempt property.

## E.

The Bankruptcy Code expressly recognizes the right of setoff of "mutual" obligations and treats a right of setoff as the equivalent of a security interest. §§ 553(a)

do not state the name and age of the qualifying dependents. Since it appears from the debtors' schedules, however, that they do in fact have two dependents, the court will assume that the total of $10,653.00 claimed on the amended homestead deed is within the amount permitted by statute.

7. Virginia Code Ann. § 34–5 states:

The property exemptions created under this Code shall not be claimed against the following debts:
1. For the purchase price of such property or any part thereof. If the property purchased and not paid for is exchanged for or converted into other property by the debtor, such last named property shall not be exempted from the payment of such unpaid purchase money.

2. For spousal or child support obligations. Section 34–5 is not the sole statutory limitation on exemptions, however. See Va.Code Ann. § 34–1 (exemptions do not apply to "an obligation resulting from an intentional tort") and 34–3 (distress for state or local taxes and fines and damages arising from trespass by animals).

8. Although in their pleadings, the debtors cited only to Va.Code Ann. § 34–5, at oral argument counsel for the debtors also relied on § 522(c), Bankruptcy Code, which provides that property exempted by a debtor is liable for only a few specific types of pre-petition debts. *See In re Scott*, 199 B.R. 586 (Bankr.E.D.Va.1996). Section 522(c) is not strictly applicable to the present case, however, since by its express terms it applies only to pre-petition debts, and the trustee's claim against the debtors arises post-petition.

and 506(a), Bankruptcy Code; *see In re Conti,* 50 B.R. 142 (Bankr.E.D.Va.1985) (creditor who otherwise meets the requirements for setoff under § 553 not prohibited from doing so simply because the debtor's obligation to the creditor has been discharged). As cogently explained by the Supreme Court, "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 288, 133 L.Ed.2d 258 (1995). While § 553 specifically addresses only setoff of *pre-petition* debts and is silent about post-petition debts, the general rule appears to be that so long as the requisite mutuality exists, post-petition debts may be set off against each other. 5 Collier on Bankruptcy § 553.03[6] at 553–56 to 57 (Lawrence P. King, Ed., 15th ed. Rev.1996) ("The position that mutual postpetition obligations may be offset one against the other is undoubtedly correct. The fact that a debtor may be in bankruptcy does not, in and of itself, suspend the reasons for applying the doctrine, as section 553 well illustrates.")

■ Setoff is recognized in Virginia law as a counter demand of a liquidated sum growing out of a transaction extrinsic to the plaintiff's demand, for which an action on contract might be maintained by the defendant against the plaintiff and which is now exhibited by the defendant against the plaintiff for the purpose of counterbalancing in whole or in part the plaintiff's demand, and, where it exceeds the plaintiff's demand, of recovering a judgment in his own favor for the excess.

*National Bk. and Trust Co. at Charlottesville v. Castle,* 196 Va. 686, 695, 85 S.E.2d 228, 233 (1955) (original source omitted); *see also Odessky v. Monterey Wine Co.,* 188 Va. 184, 190, 49 S.E.2d 330, 332 (1948) ("[A] set-off must be a debt, or at least in the nature of a debt, and that against which it is to be set off must likewise be a debt. It must be a debt against a debt.") (Original source omitted); 5 Collier on Bankruptcy ¶ 553.01[1] at 553–7. Here, the trustee, in his capacity as trustee, owes the debtors, in their capacity as

debtors, $10,000. The debtors, in their capacity as debtors, owe the trustee, in his capacity as trustee, $11,304.77. Both obligations arose post-petition. The obligations therefore satisfy the requirements for mutuality, and are potentially subject to setoff.

■ The crucial question is whether the debtor's exemption of the funds held by the trustee presents an obstacle to the right of setoff that would otherwise exist. The general rule in Virginia is that a creditor may not exercise a right of setoff against exempt property. *Commonwealth of Va. v. Haley (In re Haley),* 41 B.R. 44, 46 (Bankr.W.D.Va. 1984); *In re Terry,* 7 B.R. 880, 883 (Bankr. E.D.Va.1980); *Atlantic Life Ins. Co. v. Ring,* 167 Va. 121, 126, 187 S.E. 449, 451 (1936); *see also Hodgson v. Lakewood Broadcasting Service, Inc.,* 330 F.Supp. 670, 673–74 (D.Colo.1971) (minimum wages due to debtor under Fair Labor Standards Act immune from setoff against his employer); *Commerce Union Bank v. Haffner (In re Haffner),* 12 B.R. 371, 373 (Bankr.M.D.Tenn.1981) (bank not entitled to set off amounts in debtors' accounts which they properly exempted); *Finance Acceptance Co. v. Breaux,* 160 Colo. 510, 419 P.2d 955, 958 (1966) (employer not entitled to setoff against employee's exempt wages); *Williams v. Dept. of Public Welfare,* 43 N.J.Super. 473, 129 A.2d 56, 59–60 (Law Div.1957) (municipality not entitled to set off its claim against former employee arising out of embezzlement against employee's worker's compensation award). Other jurisdictions, however, have reached a different conclusion. *See In re Swickard,* 133 B.R. 902, 905 (Bankr.S.D.Ohio 1991) (bank entitled to setoff against funds in debtors' bank account even though the debtors claimed the property exempt); *Daugherty v. Central Trust Co. of Northeastern Ohio,* 28 Ohio St.3d 441, 504 N.E.2d 1100, 1104–05 (1986) (bank entitled to setoff of funds in bank account which were properly exempted as exempt wages).

In *Ring,* which is perhaps the clearest expression of the Virginia policy, the debtor became entitled to disability payments under an insurance policy in the amount of approximately $3,800. *Id.* at 123, 187 S.E. at 450. The debtor filed for bankruptcy and claimed the insurance payments as exempt. *Id.* At

the time the debtor filed for bankruptcy, he was independently indebted to the insurance company in the amount of approximately $9,000 arising from the assumption of a deed of trust. *Id.* at 121–24, 187 S.E. at 450. The insurance company argued that it was entitled to set off the disability benefits, notwithstanding their exempt status, against the amounts owed on the deed of trust. The then-Supreme Court of Appeals of Virginia sided with the debtor and held that exempt property was not subject to setoff for amounts a debtor owes his or her creditors. *Id.* at 131, 187 S.E. at 453–54. Since the statute exempted disability payments from any "lien of any attachment, garnishment proceeding, writ of fieri jacias [*sic*], or to levy or distress in any manner, for any debt due by the holder of such policy[,]" the court found that the statute also precluded setoff of such payments. *Id.* at 124–27, 187 S.E. at 450–52. The court reasoned as follows:

> We are of opinion that the legislative intent was to exempt such payments or benefits to one entitled thereto from all claims of creditors. The legislative purpose of this statute was to protect from the claims of creditors such a policy holder who might be overtaken by accident or sickness and who has become entitled to benefit payments and thus likely prevent him and his family from becoming an object of public charity. While the statute does not in express terms mention 'set-off' along with 'the lien of a judgment' etc., yet it must be remembered that such statutes being remedial they should have a liberal construction in order that the legislative intent and purpose may be accomplished. The exemption of such payments from set-off finds strong support in the text books and in decided cases. There are few cases to the contrary.

*Id.* at 126, 187 S.E. at 451. The court went on to add that

statutes providing for exemptions are to be liberally construed in order to accomplish the purpose of such statutes and that the courts generally decline to allow a set-off against exempt property or against claims arising out of such property. This seems to be true even though 'there is no express provision protecting exempt property from the right of set-off.'

*Id.* at 128, 187 S.E. at 452.

A subsequent bankruptcy case from the Western District of Virginia has distinguished *Ring* where the claim sought to be offset arose as the result of a criminal act. *In re Haley,* supra. In *Haley,* the debtor, a former state employee, claimed under her homestead exemption $5,000 of the refund due her from the Virginia state retirement system. *Id.* at 45. The debtor, however, had previously been convicted of embezzling from the state, which resulted in a claim by the state for over $20,000. The debtor did not list the state as a creditor on her schedules. The state sought to set off the debtor's refund against the amount she owed the state. Id. While the court acknowledged the general rule that a creditor may not exercise a setoff against property exempted in bankruptcy, it observed that certain exceptions existed. *Id.* at 46. In particular, the court noted that Va.Code Ann. § 34–1 did not permit a homestead exemption to be claimed against "an obligation resulting from an intentional tort," [9] and on that basis the court allowed the setoff.

█ This court has found no reported case involving the same fact pattern as the present case—that is, a bankruptcy trustee holding exempt funds while simultaneously asserting a claim against the debtor for turnover of estate assets. Clearly, strong arguments can be made both for allowing and not allowing setoff. Nevertheless, while the issue is close, the court concludes that the facts in the present case are more closely

---

9. I have previously held that the specific restriction in Va.Code Ann. § 34–1 concerning intentional torts conflicts with § 522(c), Bankruptcy Code, and that, with respect to *pre-petition debts,* exempt property is liable only for those debts listed in § 522(c), Bankruptcy Code. *In re Scott,* 199 B.R. 586 (Bankr.E.D.Va.1996). *Scott* is thus inconsistent with *Haley,* at least as to pre-petition debts. The concerns expressed in *Scott* would not apply, however, to obligations arising *post-petition,* since § 522(c) itself does not apply to post-petition obligations. Accordingly, there is no bar to applying Va.Code Ann. § 34–1 in a situation where the debt that is sought to be enforced arose post-petition.

analogous to those in *Haley* than to those in *Ring*. In *Ring*, the creditor's claim was purely contractual in nature and involved no measure of wrong-doing. In the present case, by contrast, the trustee's claim arises from the debtors' willful breach of a positive statutory duty to deliver and account for property of the estate. To allow a debtor who has converted property of the estate to be paid his or her exemption without having to account to the trustee by way of setoff for the value of the converted property strikes at the very integrity of the bankruptcy process. As mindful as the court is of the beneficent purpose of exemption statutes in protecting debtors from their own improvidence and preserving sufficient assets to enable the unfortunate debtor to maintain a decent standard of living and to "prevent him and his family from becoming an object of public charity," *Ring, supra*, the court cannot find that allowing a setoff under the present facts would be contrary to the legislative intent.

Simply speaking, had the debtors paid over the tax refunds and the bank account balances to the trustee as they were required to do, they would unquestionably be entitled to the $10,000 the trustee is holding from the sale of the house. They would thus emerge from bankruptcy with $10,000. Instead, the debtors kept and spent property of the estate of at least that value and in effect have paid themselves their homestead exemption already. To prohibit the trustee from setting off the value of the converted property against the exempt funds he is holding and to require him instead to pay those funds to the debtors would result in the debtors emerging from bankruptcy not only with the $10,000 in cash but also the economic benefit of the $11,304.77 they converted. When the debtors spent the tax refunds and the funds in the bank account, they received an economic benefit equivalent to their homestead exemption. Having received that benefit once, they are not entitled to receive it a second time.

Allowing the trustee to apply the exempt funds against the debtors' liability to the estate is supported by common sense and gives full effect to the homestead exemption, which is not being in any sense denied but is simply being applied by way of setoff to a mutual obligation arising post-petition. Accordingly, the court will allow the trustee to credit the exempt funds he is currently holding against the amounts the debtors owe him. Additionally, since the debtors owe the trustee more than the trustee owes to the debtors, the court will also order the debtor to pay to the trustee the difference of $1,304.77 within 30 days.

### F.

A separate order will be entered consistent with this opinion.