In re Robert J. & Charlene
L. KOCH, Debtors.

Donald F. KING, Trustee, Plaintiff,

v.

FULBRIGHT & JAWORSKI,
LLP, Defendant.

Bankruptcy No. 93–14759(MVB).
Adversary No. 95–1500.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 22, 1998.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

In the instant case, we consider whether there was an avoidable preferential transfer pursuant to 11 U.S.C. § 547 in the instant adversary proceeding filed on December 8, 1995. The trustee seeks to collect a partnership interest transferred by the debtor to a creditor within the ninety days prior to the filing of the bankruptcy case.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 (1994). Moreover, this court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2).

The dispute originates on the complaint filed by the chapter 7 Trustee ("Trustee") against Fulbright & Jaworski, L.L.P. ("Fulbright") to recover an alleged preferential transfer pursuant to 11 U.S.C. § 547(b) (1994). Prior to filing their petition on November 15, 1993, one of the debtors, Robert

J. Koch ("Koch"), was a partner with Fulbright and withdrew as partner on October 25, 1993. As a partner, Koch owned a partnership interest in the defendant. As of October 25, 1993, the value of Koch's partnership interest in the defendant was approximately $194,309.35. Upon withdrawing, Koch transferred the value of his partnership interest to Fulbright as partial payment of his indebtedness to Fulbright, which the trustee alleges constitutes a preferential transfer.

The following facts have been stipulated to by the parties: Fulbright & Jaworski, L.L.P. ("Fulbright") is, and at all relevant times was, a Texas partnership governed by Texas law, and the rights and obligations of its partners were and are governed by the Fulbright Partnership Agreement. On April 17, 1989, Koch was admitted as a partner in Fulbright. In connection with his admission to partnership Koch ratified, confirmed and adopted the Fulbright Partnership Agreement and agreed to be bound by the Fulbright Partnership Agreement, subject to the express provisions of the Memorandum of Agreement entered into on that date by Fulbright and Koch. When Koch was admitted to partnership in Fulbright in 1989, he was issued 465 "Units" representing his ownership interest in Fulbright and his share in the partnership income.

During all relevant periods, under the terms of the Fulbright Partnership Agreement, the sharing of partnership income was based on "Units" assigned to each partner, with the sharing of net partnership income being allocated among the partners in the ration of their respective Units. When a partner was admitted to Fulbright, the partner was required to make a capital contribution to Fulbright equal to the book value of the number of Units assigned to that partner, as reflected in the accounting records of Fulbright.

As of January 1, 1989, the book value of each Unit issued to Koch was $230.00, so that the total book value of his Units in Fulbright was $106,950.00. As consideration for being issued the 465 Units, Koch was required to make a capital contribution to Fulbright equal to the book value of the number of

units he was assigned, and Koch obligated himself to make such capital contributions by executing a note to Fulbright in the principal amount of $106,950.00.

After joining Fulbright, Koch began experiencing financial difficulties, in part from his inability to rent the office he occupied prior to joining Fulbright. In November of 1989, Fulbright agreed to make loan advances to Koch to assist him in making the rental payments. The agreement with Koch concerning the loan advances was reflected in a written agreement dated January 17, 1990. The total loan advances made to Koch pursuant to this agreement amounted to $191,310.03.

As of January 1, 1992, the total amount Koch owed Fulbright, based upon the loan advances and the issuance of additional units, was $271,749.73. On that date, Koch signed a promissory note to Fulbright promising to pay $271,749.73 pursuant to his obligation to make capital contributions and pursuant to Fulbright's loan advances to assist him with making his lease payments.

On October 25, 1993, Koch withdrew as a partner from Fulbright. As of October 25, 1993, Koch's Units had a book value of $194,309.35, before adjustment for loans and advances. On November 15, 1993, the Debtors filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code, and the Trustee was appointed interim trustee and later trustee in the Debtors' Chapter 7 case.

The settlement of Koch's regular partnership capital account balance as of October 25, 1993, was as follows:

| | |
|---|---|
| Book value of 615 units as of January 1, 1993 | $169,125.00 |
| Capital account adjustment owing as of January 1, 1993 | (463.74) |
| Capital contribution paid in May 1993 | 463.74 |
| Unpaid principal of capital account note of January 1, 1992 | (271,749.73) |
| Accrued unpaid interest owing on capital account as of January 1, 1992 | (783.42) |
| Interest accrued on capital account note from January 1, 1992 through December 31, 1992 | (24,457.48) |
| Interest accrued on capital account note from January 1, 1993 to October 25, 1993 | (19,901.01) |
| Interest withheld from partner distributions from January 1, 1993 to October 25, 1993 | 13,860.00 |
| Share of Retirement Reserve related to departing partners from January 1, 1993 to October 25, 1993 | 25.99 |

| | |
|---|---|
| Retirement Reserve not refundable upon withdrawal per Section 4.2 of the Partnership Agreement (615 units/148,930 total units × 350,003) | (1,445.31) |
| Share of net earnings for the period January 1, 1993 to October 25, 1993, including $751.46 share of additional 1993 income allocated to capital accounts for stock received as fee in 1993 | 313,472.62 |
| Partner distributions from January 1, 1993, to October 25, 1993 (including 13,860 withheld and applied to pay interest) | (284,130.00) |
| Group insurance premiums charged to capital account from January 1, 1993, to October 25, 1993 | (2,738.95) |
| Regular capital account balance as of October 25, 1993 | (108,722.29) |

The Trustee's claim against Fulbright, if any, constitutes the sole asset in the bankruptcy estate.

Fulbright asserts that the Trustee is requesting an avoidance of the transfer of the debtor's capital account that he maintained with Fulbright. The Trustee counters that the transfer of the partnership interest is a preferential transfer in that *inter alia*, the transfer occurred within ninety days of the commencement of the case. The Trustee does not seek the return of the capital account, rather he is requesting $194,309.35 which represents the book value of the partnership interest that the debtor transferred.

Fulbright contends that no preferential transfer occurred, and further asserts that even if there was a preferential transfer, the transfer is subject to setoff or recoupment. As a result, the trustee is not entitled to any return. The trustee responds that recoupment is not available because for recoupment to apply, there must be two claims, one of each party, arising out of the same transaction between the parties. Here, the debt arises out of the partnership agreement and out of Fulbright's agreement to cover rental expenses that the debtor incurred. Further, the trustee asserts that setoff does not apply because there is no mutuality here.

█ Fulbright argues that even if the transfer was preferential and subject to avoidance, it is entitled to invoke the defense of either recoupment or setoff. The trustee bears the burden of proving the elements for an avoidance of a preference under section 547 and the defendant has the burden of proof on any asserted defenses. 11 U.S.C. § 547(g).

█ In circumstances where a prepetition setoff is asserted in defense to an adversary proceeding brought by a trustee seeking to avoid a preferential transfer, the court must first determine whether the setoff is valid under section 553. *Durham v. SMI Indus., Corp.*, 882 F.2d 881, 882 (4th Cir. 1989) "Only if the court finds the setoff invalid, and further concludes that no right of setoff exists in bankruptcy is section 547 applied." *Durham*, 882 F.2d at 882; *Talbot v. Ohio Student Loan Comm'n (In re Stall)*, 125 B.R. 754, 757 (Bankr.S.D.Ohio 1991); *Petersen v. State Employees Credit Union (In re Kittrell)*, 115 B.R. 873, 881 (Bankr. M.D.N.C.1990).

Section 553(a) of the Code provides that, except as provided in sections 362, 363 and 553, the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." The statute is subject to certain limitations discussed below. 11 U.S.C. § 553(a).

█ The right of setoff of 'mutual' obligations is expressly recognized in the Bankruptcy Code which treats a right of setoff as the equivalent of a security interest. 11 U.S.C. §§ 553(a) and 506(a). *In re Ward*, 210 B.R. 531, 535 (Bankr.E.D.Va.1997) (citing *In re Conti*, 50 B.R. 142 (Bankr.E.D.Va.1985) (holding that a creditor who otherwise meets the requirements for setoff under § 553 is not prohibited from offsetting the claim simply because the debtor's obligation to the creditor has been discharged)). As explained by the Supreme Court, "[t]he right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Ward*, 210 B.R. at 536 (quoting *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 288, 133 L.Ed.2d 258 (1995)).

█ The doctrine of setoff is permitted in limited circumstances in bankruptcy, *Jobin v. Ripley (In re M & L Business Mach.*

*Co.),* 198 B.R. 800, 811 (D.Colo.1996) (citing *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155, 157 (10th Cir.1986)), and preserves a state created right. *M & L Business Machine,* 198 B.R. at 811. In order for setoff to apply, there "must be a debt against a debt." *Ward,* 210 B.R. at 536 (quoting *Odessky v. Monterey Wine Co.,* 188 Va. 184, 190, 49 S.E.2d 330, 332 (1948)).

In Virginia, setoff is recognized as:

a counter demand of a liquidated sum growing out of a transaction extrinsic to the plaintiff's demand, for which an action on contract might be maintained by the defendant against the plaintiff and which is now exhibited by the defendant against the plaintiff for the purpose of counterbalancing in whole or in part the plaintiff's demand, and, where it exceeds the plaintiff's demand of recovering a judgment in his own favor for the excess.

*Ward,* 210 B.R. at 536 (quoting *Nat'l Bank and Trust Co. v. Castle,* 196 Va. 686, 695, 85 S.E.2d 228, 233 (1955)).

In order for setoff to apply, the defendant must prove:

1. that the creditor holds a "claim" against the debtor that arose prepetition;

2. that the creditor owes a "debt" to the debtor that also arose prepetition;

3. that the claim and the debt are mutual; and

4. that the claim and the debt are each valid and enforceable.

5 COLLIER ON BANKRUPTCY ¶ 553.01[1], at 553–7 (Lawrence P. King et al., eds., 15th ed. rev.1997).

Thus, first, the creditor must hold a claim against the debtor that arose prepetition. A claim is defined in section 101 as "any right to payment...." 11 U.S.C. § 101(5). Second, the creditor must also owe a debt to the debtor that also arose prepetition. A debt is defined in section 101 as "liability on a claim." 11 U.S.C. § 101(12). Generally, anything that would be a prepetition claim, if asserted by a creditor against a debtor, would properly be a debt owed by a creditor to the debtor. 5 COLLIER ON BANKRUPTCY ¶ 553.03[2][a], at 553–25. Additional-

ly, for the purposes of claim and debt under section 553, most types of obligations will qualify for setoff under the statute. *Id.* at ¶ 553.01[1] at 553–7.

Third, the debt must be mutual. Courts strictly construe mutuality. 5 COLLIER ON BANKRUPTCY ¶ 553.03[3], at 553–27. However, mutuality is not defined by the Bankruptcy Code and is subject to interpretation. *Id.* As a general rule, mutuality requires that the debts be owed between the same parties acting in the same capacity but not necessarily of the same character. *Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.),* 98 B.R. 243, 248 (Bankr. E.D.Va.1989). This simply means that the creditor is indebted to the debtor who is similarly indebted to the creditor. *A & B Homes,* 98 B.R. at 248.

Fourth, the claim and debt must be enforceable. Here, the issue of enforceability has not been raised. Nor has there been any indication that either the debt owed by Fulbright to the debtor or the debt owed by the debtor to Fulbright are not enforceable.

Applying the elements of setoff, we find that a right to setoff has been met by Fulbright. Clearly, there are mutual obligations between the parties. The debtor owes Fulbright the amount due under the promissory note, which includes the amount due under the partnership agreement and the loans. Also pursuant to the partnership agreement, Fulbright owes the debtor the value of his partnership interest at the time of his withdrawal from the partnership. These two debts may be offset so that the amount owed to Fulbright by the debtor is reduced by the amount owed to the debtor by Fulbright as of October 25, 1993.

Having determined that Fulbright met the requirements for a valid setoff; we must then examine the limitations to the right to setoff under sections 553(a) and (b). First, under section 553(a)(1), setoff may not be exercised where the creditor's claim is disallowed. Here, no such disallowance has been put at issue

Second, under section 553(a)(2), setoff is prohibited when the claim was transferred by an entity other than the debtor to a

creditor after the commencement of the case, or after ninety days before the petition was filed while the debtor was insolvent. 11 U.S.C. § 553(a)(2). This section applies when the creditor acquires a claim through an assignment. *Stall*, 125 B.R. at 757; *see Jones Truck Lines, Inc. v. Target Stores (In re Jones Truck Lines, Inc.)*, 196 B.R. 123, 126–127 (Bankr.W.D.Ark.1996). There has not been any assignment of claims in this case.

Third, section 553(a)(3) limits the right of setoff when a debt is incurred to the debtor by a creditor after the ninety days before the date of the commencement of the case, while the debtor was insolvent and for the purpose of obtaining a setoff against the debtor. 11 U.S.C. § 553(a)(3). No evidence or allegations have been asserted to support such a contention. Clearly, the debt to the debtor was incurred by Fulbright in connection with the debtor joining the partnership. There is no proof that the purpose of the debt was to setoff what the debtor owed Fulbright. Accordingly, this limitation does not apply.

Additional limits on the right to setoff are contained in section 553(b) which is commonly referred to as the "improvement in position test." Under this test, the trustee may recover all or part of the amount offset if the setoff occurred within ninety days of the filing of the bankruptcy case and the creditor improved its position as a result of the setoff. 11 U.S.C. § 553(b)(1). The "purpose in enacting section 553(b)(1) was to prevent an 'improvement in position' by one creditor at another's expense—not to prohibit setoff of a mutual debt that arises during the prepetition period." *Lopes v. United States Dep't of Housing and Urban Dev. (In re Lopes)*, 211 B.R. 443, 449 (D.R.I.1997). Here, Fulbright did not improve its position within the ninety day prepetition period. The amount owed to the debtor on the date that the petition was filed is the same as it was ninety days prior to the filing. As such, the setoff is not limited by section 553(b).

Because a valid exercise of setoff is available to Fulbright, we conclude that it is not necessary to analyze the trustee's assertion that the transfer is an avoidable preference under section 547. Accordingly, the trustee's

Complaint to Avoid Preferential Transfer is denied. A separate order will be entered consistent with this opinion.