**In re Charles Randall HAMBLEN and Janet Smith Hamblen, Debtors.**

### No. 05–95215–JB.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 1, 2006.

Charles Randall Hamblen, Janet Smith Hamblen, Alpharetta, GA, pro se.

S. Alexander Teel, Lamberth, Cifelli, Stokes & Stout, Atlanta, GA, for Chapter 7 Trustee.

## ORDER

JOYCE BIHARY, Chief Judge.

This Chapter 7 case involves the Court's authority to surcharge a debtor's exemptions. Procedurally, it is before the Court on the Trustee's objections to debtors' claims of exemption and the Trustee's request to surcharge the claims of exemptions (Docket Entry No. 222), as amended on August 7, 2006 (Docket Entry No. 255). Debtors did not file any written response and are appearing *pro se.* A hearing on the matter was conducted on August 10, 2006, and the debtors Janet Smith Hamblen and Charles Randall Hamblen testified as did the Chapter 7 Trustee and the Trustee's real estate broker. After carefully considering the testimony, the documentary evidence, the record and the applicable law, the Court concludes that the Trustee's request to surcharge debtors' homestead exemption and the claimed exemption in the BMW 330i automobile should be granted. The request to surcharge IRA accounts will be denied, unless the Trustee can demonstrate that the account or accounts at issue are not excluded from property of the estate under 11 U.S.C. § 541(c)(2)(2006). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B)(2006).

Debtors originally filed this case under Chapter 11 through counsel Paul Marr on August 15, 2005. The debtors filed Schedules and a Statement of Financial Affairs on September 9, 2005. On January 13, 2006, creditor Flag Bank filed a motion for the appointment of a Chapter 11 Trustee; the motion was granted, and S. Gregory Hays was appointed as the Chapter 11 Trustee. On March 2, 2006, Mr. Hays filed a motion to convert the case to a Chapter 7 case. Attorney Marr filed an application to withdraw as counsel for the debtors, which the Court granted on April 4, 2006, and the debtors have represented themselves since that time. The Court granted the motion to convert on May 3, 2006, and debtors filed amendments to some of their schedules on May 12, 2006. Mr. Hays now serves as the Chapter 7 Trustee.

The exemptions claimed by debtors in their amended Schedule C include a $20,000.00 homestead exemption, a $3,500.00 exemption in a 2003 BMW 330i valued at $19,090.00, a $3,500.00 exemption in a 2002 Jeep Liberty valued at $8,000.00,

and exemptions in household goods and furnishings in the amount of $10,000.00, wearing apparel in the amount of $1,000.00, and furs and jewelry in the amount of $1,200.00. In addition, debtors listed a number of IRA accounts as exempt property. All of the exemptions are claimed under Georgia law as set out in O.C.G.A. § 44–13–100(2002).

In the Trustee's objection and motion to surcharge exemptions filed on July 6, 2006, he sought to surcharge the debtors' automobile and homestead exemptions. With respect to the BMW, the Trustee sought a surcharge to offset the loss in value of the BMW to the extent of Mrs. Hamblen's unauthorized pawn of the title to the vehicle and the Trustee's cost to obtain possession of the title and the vehicle. With respect to the homestead, the Trustee argued that the debtors had lived in the house for the last six months without making any monthly mortgage payments and had refused to cooperate with the Trustee and his broker in the appraisal and sale of the house, requiring the Trustee to file a motion compelling the debtors to vacate the property. The Trustee requested a surcharge on the homestead exemption to offset the additional secured indebtedness and the costs associated with debtors' failure to cooperate in the sale of the assets.

In the Trustee's amended objections and motion to surcharge exemptions, he added new facts and requests for relief. The relief he requested was a surcharge on all claimed exemptions including a surcharge on household goods, jewelry and all IRA accounts in addition to a surcharge on the homestead and motor vehicle exemptions. The new facts included allegations that the Hamblens concealed a transfer of $200,000.00 to a family trust prior to bankruptcy, that debtors' financial statements issued within two years prior to bankruptcy show substantially greater values for jewelry and household goods, that the debtors have filed several motions causing administrative fees to soar, continued allegations with respect to the debtors' refusal to cooperate in efforts to sell the house and allegations concerning another vehicle which the Trustee contends should be property of the estate.

The filing of a bankruptcy petition creates an estate composed of all legal and equitable interests of the debtor in property. 11 U.S.C. § 541(2006). An individual debtor may exempt from property of the estate either property specified in § 522(d) of the Bankruptcy Code which contains the federal exemptions, or, alternatively, the exemptions allowable under state law and non-bankruptcy federal law. The Bankruptcy Code allows a state to "opt out" of allowing its residents to take advantage of the federal exemptions and Georgia has done so. Accordingly, residents of Georgia filing bankruptcy petitions may claim only those exemptions allowable under Georgia law and general federal law.

In exceptional circumstances, bankruptcy courts have the authority to fashion a remedy that allows a trustee to surcharge or offset an exemption. *Latman v. Burdette*, 366 F.3d 774 (9th Cir. 2004); *In re Karl*, 313 B.R. 827 (Bankr. W.D.Mo.2004), *In re Ward*, 210 B.R. 531 (Bankr.E.D.Va.1997), and *In re Swanson*, 207 B.R. 76 (Bankr.N.J.1997). The Ninth Circuit in *Latman* held that while the Bankruptcy Code does not explicitly provide for the remedy of surcharge against a debtor's exemption in the case of an underreporting of assets, in a case involving exceptional misconduct, bankruptcy courts must be able to develop a remedy that would prevent what would otherwise be a fraud on the Court and creditors caused by the failure to disclose monies that should have been listed on schedules and available for creditors. "The bankruptcy court may

equitably surcharge a debtor's statutory exemptions when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." *Latman,* 366 F.3d at 786.

■ The unusual facts in this case warrant a surcharge of the debtors' homestead and vehicle exemptions. In the Schedules and Statement of Financial Affairs, debtors do not disclose some $200,000.00 in funds which the debtors placed in a bank account in Mrs. Hamblen's mother's name on or about July 1, 2005. Less than three months before filing bankruptcy, the debtors sold a house in Canton, Georgia at 130 Antioch Place on May 27, 2005 for some $1,068,750.00 and received sale proceeds at the closing in the amount of $342,915.65. Throughout this case, parties have asked what happened to these funds. The answers have been evasive. It now appears that on July 1, 2005, a month and a half before filing bankruptcy, debtors took at least $200,000.00 of those funds and transferred them to an account the debtor opened in her mother's name at Suntrust Bank. Question 10 in the Statement of Financial Affairs requires a listing of all property, other than property transferred in the ordinary course of business, transferred either absolutely or as security within a year before bankruptcy. Debtors failed to include any mention of the transfer of the $200,000.00 to Mrs. Hamblen's mother. At the August 10, 2006 hearing, Mrs. Hamblen testified that her mother gave her the power of attorney on this account, that her mother knew she was using the money and that all of the money is gone; Mrs. Hamblen spent all the funds in the account and closed it in December of 2005 while in this bankruptcy proceeding. In response to repeated questions as to

what the debtors did with all these funds, debtor testified that she paid personal bills. At the conclusion of the hearing, the Court ordered the debtors to produce copies of all bank statements and cancelled checks on this account to the Trustee.

Mrs. Hamblen falsely testified about this matter at her 2004 examination taken on June 13, 2006. The Trustee asked her to explain a $200,000.00 withdrawal on July 1, 2005 from the debtors' personal bank account. She testified that it was used as a "gift to the trust," referring to a family trust "for the benefit of her children." At the August 10, 2006 hearing, she admitted that her June 13, 2006 testimony was not true.

The Trustee also introduced an e-mail that Mrs. Hamblen wrote on July 27, 2006, to Mr. Hamblen with the subject "Letter re $200K." This e-mail was apparently forwarded to the Trustee from another individual who in turn received a copy of the e-mail from Mr. Hamblen. In the e-mail, Mrs. Hamblen included a letter which she was writing to her mother's attorney in which she stated "I have not been honest in my statements for a number of reasons...." Contrary to her testimony at the 2004 examination on June 13, 2006, she stated in this July 27, 2006 e-mail that she and her husband used all of the $200,000.00 for themselves and did not give that money to the family trust. Her e-mail further stated that $200,000.00 was placed into a bank account in her mother's name with her mother's consent and that her mother provided her with a power of attorney so that the debtors could pay their personal bills without fear of garnishment.

The Statement of Financial Affairs contains a false statement with respect to payments to Mrs. Hamblen's parents. Question 3 on the Statement of Financial Affairs asks for payments to creditors and

requires the debtor to list all payments made within one year preceding the commencement of the case or for the benefit of creditors. Debtors listed payments to Sara and Walt Smith (Janet Hamblen's parents) at $54,940.00. At the August 10, 2006 hearing, Mrs. Hamblen testified that debtors did not make a $54,940.00 payment to her parents, but that she put this in the Statement of Financial Affairs because "they should have been paid that money." Debtors' purported explanation for this was that her mother sold a second-to-die life insurance policy held by a family trust and that her mother realized somewhere between $23,000.00 and $27,000.00 from the transaction. Mrs. Hamblen then testified that her mother used these funds to make four mortgage payments for a related company, Halstin, LLC. This confusing testimony does not explain or justify the false statement filed in court.

The debtors' concealment and false statements with respect to the $200,000.00 along with the fact that debtors have dissipated all these funds justify an offset or surcharge against the $20,000.00 homestead exemption.[1] The facts here are similar to the facts in *Latman.* There, the debtors sold a car and a boat and received $8,500.00 in cash, but did not list the proceeds of these sales in their bankruptcy schedules and gave inaccurate accountings of these proceeds in response to the Trustee's requests. The Court allowed the Trustee to surcharge the debtor's exemptions in other assets, a ring and a minivan, by the amount of the unaccounted for proceeds. Here, the debtors sold real property before the bankruptcy and placed $200,000.00 of the proceeds into an account in debtor's mother's name under an arrangement whereby the debtors had full use of the money. The debtors did not truthfully account for these proceeds or disclose these facts in their Schedules, Statement of Financial Affairs or at the § 341 meeting of creditors. In order to protect the integrity of the bankruptcy process, it is necessary to surcharge the homestead exemption, as the debtors retained and spent unreported assets far in excess of the $20,000.00 homestead exemption allowed in Georgia. Like the remedy fashioned in *Latman,* the surcharge here is not punitive, but is necessary to protect the Hamblens' creditors by preventing the Hamblens from sheltering more assets than permitted by Georgia law. *See also Ward,* 210 B.R. at 538 (where court allowed a setoff against debtor's homestead exemption for the amount debtor spent from an undisclosed bank account and an undisclosed tax refund) and *Karl,* 313 B.R.

---

1. The Trustee asserted additional grounds for surcharging the debtors' homestead exemptions including debtors' extreme lack of cooperation in the sale of their house at Pennroyal Lane and debtors' failure to make mortgage payments on the property, thus decreasing the equity available to creditors. While the Court need not decide these issues since there is otherwise a sufficient basis for surcharging the homestead exemption, a few comments seem appropriate. First, as a general proposition, it would seem that the failure to make mortgage payments in and of itself would not be a sufficient basis to impose a surcharge on a debtor's homestead exemption. Otherwise, most debtors in bankruptcy would lose their exemption. Second, after hearing the evidence at the August 10, 2006 hearing, the Court made specific oral findings and concluded that the debtors had both been extremely uncooperative in the sale of the house. The Court granted the Trustee's motion to compel and ordered the debtors, among other things, to meet with the Trustee's agent, to provide the key, to permit the agent to tour and preview the premises and to return the "for sale" sign. The Court also ordered the debtors to vacate the property by 5:00 p.m. on August 31, 2006. Should the debtors fail to vacate the property or otherwise comply with the Order on the Trustee's motion to compel, then the Trustee may pursue sanctions including the sanction of contempt.

at 831 (where the court surcharged debtor's homestead exemption by value of a truck that debtor failed to turnover to the trustee).

■ The facts described above also justify a surcharge against the debtors' claimed exemption of $3,500.00 in their BMW. However, there are additional facts with respect to this vehicle that warrant a surcharge independent of the debtors' conduct with respect to the $200,000.00. The BMW is listed in the Schedules as owned by Mrs. Hamblen and is estate property. The evidence presented showed that five months after filing bankruptcy, on December 15, 2005, Mrs. Hamblen took the title to the BMW to a title pawn shop, Southeastern Lending Company, Inc., and borrowed $12,000.00. She did not advise her then lawyer and did not seek permission from the Court to encumber an estate asset. The Trustee was forced to file an adversary proceeding against Southeastern Lending Company, Inc. to recover the car title. These unauthorized actions damaged the estate, and the debtors obtained $12,000.00 of value from this vehicle, far more than the $3,500.00 permitted for a motor vehicle exemption under Georgia law.

■ The parties have not addressed the burden of proof in a motion to surcharge an exemption, but the burden of proof in an objection to an exemption is a preponderance of the evidence. (*In re Salvucci*, 339 B.R. 279, 281 (Bankr. D.Mass.2006)). Even if the burden on a surcharge motion were determined to be one of clear and convincing evidence as in the case of denying a debtor's motion to amend schedules (*See In re Wood*, 291 B.R. 219, 228 (1st Cir. BAP 2003)), the trustee has met the higher burden in this case. He has demonstrated by clear and convincing evidence that these debtors fraudulently concealed their transfer of $200,000.00 a month and a half before bankruptcy to an account in Mrs. Hamblen's mother's name and that the debtors received $12,000.00 by pawning the title to estate property without court authority. From this conduct, the debtors realized more value than the $20,000.00 homestead exemption and the $3,500.00 vehicle exemption allowed under the Georgia exemption statute.

For the sake of completeness, it is appropriate to comment on two other vehicles listed in this case. In Schedule B–Personal Property, filed in the beginning of the case, debtors listed three vehicles: a 2002 Jeep Liberty, a 2004 Chevrolet Avalanche, and the BMW. The Avalanche was listed as owned by Mr. Hamblen and was valued at $28,000.00. The Jeep was listed as owned by Mrs. Hamblen with a value of $13,000.00. In the amended Schedule B filed *pro se,* debtors no longer listed the Avalanche, and they valued the Jeep at $8,000.00. In Schedule C–Exempt Property, debtors claimed a $3,500.00 exemption in the Jeep. At the August 10, 2006 hearing, the Trustee announced that he does not believe the Jeep has any value to the estate and he may abandon any interest in that vehicle. Thus, no ruling on any objection to the claimed exemption in the Jeep appears necessary.

The facts with respect to the Avalanche are troubling and confusing. Mr. Hamblen testified that about a month before filing bankruptcy, he purchased the used Avalanche for $28,000.00 from an individual in North Carolina. He testified that he has not been able to locate the bill of sale, but that he had the title issued in the name of a new company that Mr. and Mrs. Hamblen formed called In Town Artisan, LLC. The Secretary of State's records show that In Town Artisan, LLC, was not created until November 22, 2005, three months after the Hamblens filed bankruptcy and

four months after Mr. Hamblen purchased the Avalanche. The only certificate of title in evidence shows the date of issuance as January 18, 2006 and the date of purchase as December 13, 2005. Like Mrs. Hamblen, Mr. Hamblen pawned the title to the Avalanche with Cherokee Pawn and Title for a loan of some $12,500.00. Debtors are not now seeking any exemption in the Avalanche, nor would they be entitled to claim one. The Trustee may decide to file a complaint against the appropriate parties seeking a turnover of the title and the vehicle if the facts so warrant.

█ Debtors seek to exempt household goods and furnishings worth $10,000.00, wearing apparel worth $1,000.00, and furs and jewelry worth $1,200.00. They list the current value of their household goods and furnishings at only $10,000.00 and their jewelry at only $2,000.00. The Trustee contends that debtors' household furnishings and jewelry are worth far more than the amounts listed. In two financial statements from 2003, one of which was submitted to the United States Small Business Association, the debtors listed jewelry valued at $50,000.00 and furniture and art valued at $300,000.00. In a financial statement presented by the debtors to the Chattahoochee National Bank dated May 19, 2004, less than 18 months before they filed bankruptcy, debtors listed jewelry at $45,000.00 and furniture and art at $250,000.00. At the hearing, debtors provided no credible explanation for the decrease in the value of their household goods and jewelry, although Mr. Hamblen testified that the numbers on the financial statements may be "exaggerated." At the conclusion of the August 10, 2006 hearing, the Court ordered debtors to meet with the Trustee's personal property appraiser on August 12, 2006, to permit the appraiser to view and photograph all of debtors' personal property, including their furniture, art and jewelry. While the facts of this case would probably justify a surcharge against all the household goods, furnishings, jewelry and art, the debtors will be allowed to retain household goods and furnishings valued up to only $10,000.00 and jewelry valued up to only $1,000.00. Any personal property in these categories in excess of these amounts must be turned over to the Trustee promptly so that the property can be liquidated for the benefit of creditors.

The debtors also listed a number of IRA accounts in Schedule C as exempt under O.C.G.A. § 44–13–100(a)(2.1)(2002). In the amended objections to debtors' exemptions, the Trustee requested that he be permitted to surcharge all of debtors' exemptions, including the claimed exemptions in IRAs, for the delay and costs attributable to debtors' alleged improper conduct. At the August 10, 2006 hearing, the debtors maintained that a number of these accounts were Roth IRAs or educational IRAs for their children in which they had no interest. The account that appeared to be in issue was an IRA account at Merrill Lynch described in Schedule C as Account 86E40 with a value of $52,775.00. At the conclusion of the hearing, the Court deferred ruling on the Trustee's objection and motion to surcharge that account, because the facts related to the Trustee's motion with respect to that account were unclear. As a part of the Court Order entered on August 17, 2006, the Court ordered the debtors to turn over recent account statements for the IRA accounts listed on the bankruptcy schedules so that the Trustee could evaluate whether any of these accounts are assets of the estate and/or should be subject to a surcharge if they are exempt property.

█ There is an additional legal issue with respect to this Merrill Lynch IRA account and that is whether this account is

excluded altogether from property of the estate under 11 U.S.C. § 541(c)(2)(2006). This is significant because if the account is not property of the estate under § 541(c)(2), then the Trustee cannot be permitted to surcharge the account, and the Trustee's motion to surcharge that account should be denied. If, on the other hand, the account is not excluded from property of the estate under § 541(c)(2) but is instead claimed as exempt, then the Trustee's motion to surcharge can be considered by the Court. From the limited information presented to the Court, it appears that this account would not be property of the estate and thus not subject to surcharge. *See Meehan v. Wallace (In re Meehan),* 102 F.3d 1209 (11th Cir.1997) (where the Eleventh Circuit concluded that the debtor's IRA was excluded from the estate under 541(c)(2), because the IRA was exempt from garnishment under O.C.G.A.. § 18–4–22(a)(2003)). *See also Rousey v. Jacoway,* 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005) (where the Supreme Court held that individual retirement accounts were exempt under the federal exemption statute of 11 U.S.C. § 522(d)(10)(E)(2006)). If the Trustee contends that the Merrill Lynch 86E40 account or any of the other accounts listed as IRA accounts are not excluded from property of the estate under § 541(c)(2) and that any of them can still be the subject of a motion to surcharge, the Trustee should file a memorandum setting out the particular facts and the law to support that position on or before **September 25,** 2006, and the debtors will have until **October 15, 2006** to file a response. If the Trustee does not file a memorandum, the Trustee's motion to surcharge the debtors' IRA accounts listed in Schedule C will stand denied without further order.

■ Finally, the Trustee recently filed a complaint objecting to the debtors' discharge under § 727 of the Bankruptcy Code. The election of remedies doctrine does not bar the Trustee from requesting both a surcharge against the Hamblens' exemptions and a denial of discharge. *Latman,* 366 F.3d at 782.

In accordance with the above reasoning, the Trustee's motion to surcharge the debtors' homestead exemption and motor vehicle exemption is granted. Debtors will be permitted to exempt household goods and jewelry in the amounts permitted in the Georgia exemption statute, and debtors must turn over to the Trustee all household goods and jewelry in excess of those exemptible amounts. The Trustee's motion to surcharge debtors' IRA accounts will be denied, unless the Trustee can demonstrate that the accounts are not excluded as property of the estate under § 541(c)(2).