**In re Edgar Eugene KARL and Marion Patricia Karl, Debtors.**

No. 03–45229–JWV.

United States Bankruptcy Court, W.D. Missouri.

Aug. 5, 2004.

Jay T. Grodsky, Kansas City, MO, for Debtors.

## *MEMORANDUM OPINION*

JERRY W. VENTERS, Bankruptcy Judge.

On May 27, 2004, this Court entered an Order to Show Cause as to why sanctions should not be imposed on Edgar Eugene Karl and Marion Patricia Karl (collectively the "Debtors"), for their failure to comply with previous orders of this Court with respect to the recovery and surrender of a 1997 Ford pickup truck. At a July 20, 2004 hearing on the Court's Order, the Debtors did not appear and Debtors' counsel could not offer any acceptable explanation as to why the pickup truck had not been recovered and surrendered to their Chapter 7 trustee ("Trustee"). At that time, the Court withheld imposing sanctions pending the Debtors' appearance and cooperation at their 11 U.S.C. § 341(a) meeting. The Debtors have now appeared and cooperated at that meeting, and the sanctions issue is ripe for disposition.

## I. BACKGROUND

This present matter has its genesis in a motion filed by the Trustee on November 25, 2003, requesting entry of an order compelling the Debtors to recover and turn over to the Trustee a 1997 Ford pickup truck (Document No. 38). The Trustee asserted that about a week-and-a-half before the continued meeting of creditors, and after the Trustee specifically instructed the Debtors not to remove the vehicle, the Debtors had allowed a nephew—who was supposedly "in the process" of buying the vehicle—to remove it to Massachusetts. After a hearing, the Court on December 10, 2003 entered an order (Document No. 44) granting the Trustee's motion to compel, giving the Debtors until December 31, 2003, to produce the truck.

The Debtors did not deliver the truck to the Trustee. Instead, on December 31, 2003, they filed a motion (Document No. 56) requesting an extension of time, until January 15, 2004, to recover the vehicle. The Court granted this request for an extension without hearing on January 2, 2004 (Document No. 57). In various hearings since December 31, 2003, the Trustee has advised the Court that the Debtors were continually obstinate in refusing to turn over the vehicle. At a May 13, 2004 hearing, Marion Patricia Karl reiterated to the Court and the Trustee that the vehicle remained in the possession of her nephew in Massachusetts. Ms. Karl further advised the Court and the Trustee that she does not know the exact whereabouts of her nephew, she is unable to contact him, and that she has been unsuccessful in persuading her nephew to return the vehicle. The Trustee even represented to the Court that Ms. Karl had given him a telephone number for her nephew, but when the Trustee called he discovered that the telephone number belonged to an art gallery that had never heard of the Debtors' nephew. On another occasion, the Debtors represented that the pickup truck was on its way back to Missouri when it broke down,

but the Debtors did not know its exact location and were unable to retrieve it.

Based on statements made to the Court in the various hearings, it was evident to the Court that the Debtors permitted their nephew to remove the 1997 Ford pickup truck from this jurisdiction after the Debtors had filed their bankruptcy petition on August 19, 2003. It was further evident that the Debtors had failed to comply with the Orders of this Court for the recovery and surrender of the truck to the Trustee. Accordingly, on May 27, 2004, the Court entered its Order to Show Cause as to why sanctions should not be imposed (Document No. 140) based on the Debtors' failure to turn over the truck. The Debtors did not appear at the show cause hearing on July 20, 2004, and the Debtors' attorney could not offer any satisfactory explanation for their absence or actions.[1]

## II. DISCUSSION

■■■ Based on § 105 of the Bankruptcy Code,[2] a bankruptcy court has the inherent power to sanction contumacious conduct and to impose civil contempt sanctions. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir.1990) ("While bankruptcy courts do not have inherent civil contempt power ... we conclude that Congress has granted them civil contempt power by statute."); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir.1989) (holding that a bankruptcy court's civil contempt powers are incidental to Congress's statutory grant of powers

in the Bankruptcy Code and that giving bankruptcy courts the power of civil contempt did not offend notions of Constitutional separation of powers). *See also Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174, 1178–79 (8th Cir.1993) (finding the Fourth Circuit's reasoning in *Walters*— holding that bankruptcy courts have civil contempt powers—to be persuasive). Sanctions may either take the form of civil contempt, sanctions not otherwise authorized in the Code, or the form of general damages. 2 *Collier on Bankruptcy* ¶ 105.04[7][b] (Lawrence P. King et al. eds., 15th rev. ed. Matthew Bender 2004). A sanction of civil contempt must not be punitive, but it usually includes costs and attorney's fees inasmuch as those items are compensation for an injured party regarding the losses it suffered as a result of the other's contemptuous behavior. *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781–82 (8th Cir.1987) ("The commonly stated distinction is that if the penalty is to compensate the complaining party or to coerce the defendant into complying with the court's orders, the contempt is civil, while if the penalty is punitive, intended to vindicate the authority of the court, then the contempt is criminal."). A court may even dismiss a case if the party's conduct is wilful and contumacious, and where it works substantial prejudice to another party. *Keefer v. Provident Life and Accident Insurance Company*, 238 F.3d 937, 940–41 (8th Cir.2000). The amount of attorney's fees to be awarded is based on a court's discretion, and the amount is generally determined by adjusting the lodestar formula—the number of hours expended by the attorney multiplied by the

---

1. The Debtors' attorney represented that Marion Patricia Karl had told him that she had appeared at the courthouse in the morning, but that she could not wait to be in attendance in the afternoon when her hearing was scheduled. Court was in session all morning on July 20 and the Court never observed Ms. Karl's presence.

2. Title 11, United States Code.

attorney's hourly rate—upward or downward. *In re Spectee Group, Inc.*, 185 B.R. 146, 160 (Bankr.S.D.N.Y.1995). Imposing sanctions is a matter of discretion, that is to say it is " 'the responsible exercise of official conscience on all the facts of a particular situation' taking into consideration the purpose of the exercised power." *Wright v. Sargent*, 869 F.2d 1175, 1176 (8th Cir.1989) (quoting *Welsh v. Automatic Poultry Feeder Co.*, 439 F.2d 95, 97 (8th Cir.1971)).

 When a debtor's contemptuous conduct involves the suppression of estate property, or when a debtor fails to adequately explain its loss, a court may surcharge the debtor's exemptions in an effort to prevent a fraud on the bankruptcy court and to protect creditors by preventing the debtor from sheltering more assets than permitted by the Bankruptcy Code. *Latman v. Burdette*, 366 F.3d 774, 784–85 (9th Cir.2004). *See also In re Ward*, 210 B.R. 531, 537–38 (Bankr.E.D.Va.1997) (allowing the trustee to "setoff" funds owing to the debtor from exempt property of the estate with property of the estate that the debtor was wrongfully retaining). Whether deemed a "surcharge" or a "setoff" the purpose is not to "punish" the debtor, but to reach an equitable result by preserving the spirit of the Bankruptcy Code and the creditors' reasonable expectations in the event of liquidation.

 In this matter, the extent of the Debtors' interest in the pickup truck is not clear, but it is undisputed that the Trustee may liquidate whatever property interest the Debtors may have in it.[3] In contravention of the Trustee's rights, the Debtors turned over possession of the pickup to their nephew after filing for bankruptcy and have not adequately cooperated with the Trustee in retaining its possession. The Trustee once represented to this Court that the Debtors supplied a telephone number for their nephew in Massachusetts, but the telephone number turned out to be an art gallery that had never heard of the Debtors' nephew. Although the Debtors promised to return the pickup, the Debtors stated that the pickup had broken down somewhere between Massachusetts and Missouri, and they were unaware of its whereabouts. In short, the Debtors' asseverations that they cannot contact their nephew and that they do not know his whereabouts or the whereabouts of the pickup truck are incredible. The Trustee has attempted to gain possession of the truck for over six months and has been thwarted at every turn by the Debtors' hornswoggle and other poppycock in furtherance of their efforts to shed responsibility and shift blame to the wrongful acts of a third party not before the Court. The Trustee should not have to endure such contrived recalcitrance over the sim-

---

**3.** In his original motion to compel, the Trustee stated that the vehicle was titled to an entity known as "Corporate RAC," but that Marion Patricia Karl had advised him that she intended to file suit against Corporate RAC and an individual to obtain title to the vehicle. (The Court understands that Marion Patricia Karl was a used car dealer prior to filing bankruptcy.) In all of the hearings before the Court, the Debtors have never asserted lack of ownership of the vehicle as a reason for their failure to turn it over to the Trustee. Even if the pickup is later determined not to be property of the estate, the Debtors' claim against the vehicle is property of the estate and the Debtors cannot act to alienate that property without consent of the Trustee. *See* 11 U.S.C. § 541(a)(1) (stating that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."); 11 U.S.C. § 704(1) (stating that a trustee has the duty to "collect and reduce to money property of the estate ...."). The Debtors' interest in the pickup may be determined at the evidentiary hearing being ordered by the Court.

ple surrender of a truck, and the Court will not abide the Debtors' actions.

In this case the Debtors have a principal residence valued at $78,000.00 in their schedules. The property is secured by a first mortgage of $58,000.00 and a second mortgage of $12,000.00. The Debtors claim the remaining $8,000.00 as an exempt homestead. Based on the Debtors' failure to timely turn over the 1997 pickup truck to the Trustee, the Court finds it appropriate to surcharge the Debtors' homestead exemption to the extent that the pickup has value and is property of the estate. In addition, the Court finds that the Trustee has needlessly expended attorney's time and fees in pursuit of the pickup truck based solely on the Debtors' obstinance. The Court will therefore award the Chapter 7 trustee reasonable fees and costs from November 25, 2003, through the date the Court determines the characterization and value of the 1997 Ford pickup truck. The parties are encouraged to agree to the valuation of the pickup to save the time and expense of a hearing, for which the Debtors will be responsible for the reasonable costs and attorney's fees.[4]

This opinion constitutes the Court's findings of facts and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr.P. 9021.

---

4. The Debtors will not be responsible for the Trustee's time and expense in proving that the pickup is property of the estate.