**In re Toby SCRIVNER and Angelique Pisano, Debtors.**

**Toby Scrivner and Angelique Pisano, Appellants,**

v.

**John D. Mashburn, Trustee, Appellee.**

BAP No. 06–122.
Bankruptcy No. 05–30226–WV.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 20, 2007.

Submitted on the briefs: * Sam George Caporal and Mark W. Hayes, Oklahoma City, OK, for Appellants.

John D. Mashburn, Garvin, Agee, Carlton & Mashburn, P.C., Edmond, OK, for Appellee.

Before McFEELEY, Chief Judge, CLARK, and THURMAN, Bankruptcy Judges.

## OPINION

THURMAN, Bankruptcy Judge.

Toby Scrivner and Angelique Pisano (the "Debtors") appeal an order authorizing the trustee to "surcharge" the Debtors' exempt assets to collect the value of property of the estate not turned over pursuant to an earlier court order. For the reasons stated below, the decision of the bankruptcy court is AFFIRMED.

## I. FACTUAL BACKGROUND

The Debtors filed for Chapter 7 bankruptcy relief on October 14, 2005. John Mashburn, the Appellee in this case, was

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

appointed the Chapter 7 trustee (the "Trustee"). At the time of filing, the Debtors' only significant source of income was funds received each month for a .5% interest in a television show called "Cheaters," which they disclosed on their Bankruptcy Schedules. They did not initially claim an exemption for their interest in Cheaters, and on June 1, 2006, after notice and hearing, the bankruptcy court issued an Order Granting Trustee's Motion to Turn Over (the "Turnover Order") requiring the Debtors to turn over the income received from Cheaters post-petition (the "Cheaters Funds").[1]

The Debtors did not appeal the Turnover Order and failed to surrender the Cheaters Funds (approximately $17,000), some $13,000 of which was received after the Debtors received notice of the Trustee's Turnover Motion. In response, the Trustee served the producer of Cheaters with a copy of the Turnover Order and demanded that Cheaters begin paying the monthly payments directly to the Trustee. The Trustee also filed a Motion for Contempt and to Surcharge Debtor's Exemptions (the "Surcharge Motion"). The Debtors filed a written objection and the Court conducted a contested hearing on the Surcharge Motion on October 17, 2006, upon proper notice.[2] The bankruptcy court issued an Order granting the Surcharge Motion (the "Surcharge Order") on October 24, 2006. Specifically, the bankruptcy court ordered the Debtors to surrender and turn over to the Trustee

$17,424.75 plus interest and $1,300 as a "reasonable attorney fee incurred by the Trustee in bringing this Motion."

The Order further provided:

5. In the event said funds are not delivered to the Trustee by November 6, 2006, then the Trustee may surcharge and is hereby granted a surcharge against the Debtors' exempt property, including Debtors' retirement funds, to the extent necessary to satisfy the sums owed under paragraphs 1 through 3 above.

6. Said surcharge shall be in the amount necessary to net to the Estate and Trustee the payment of the sums owed under paragraphs 1 through 3 above and that any taxes, penalties or fees incurred by reason of the withdrawal or borrowing of said retirement accounts shall be born by the Debtors. The Estate and Trustee shall bear such tax liability as would have been incurred for receipt of the distributions from Debtors' ownership of the Limited Partnership in the Cheaters LLC TV Show as if such funds had been turned over to the Trustee without surcharge of the exempt assets.[3]

The Debtors failed to pay the Cheaters Funds to the Trustee by November 6, 2006.

The Debtors timely appeal the Surcharge Order, arguing that the funds at issue are exempt under Oklahoma law,

---

1. It appears from the record submitted on appeal that the first time the Debtors asserted an exemption in the income received from Cheaters was in response to the Trustee's Motion to Surcharge exempt assets, filed after the Debtors failed to comply with the Turnover Order. It does not appear that the Debtors have amended their Bankruptcy Schedules to formally claim this exemption.

2. *See* Response to Trustee's Motion for Order of Contempt and Motion to Surcharge Debtor's [sic] Exemptions for Failure to Comply with Order for Turnover Brief in Support, *in* Appellant's [sic] Appendix at 78.

3. Order on Trustee's Motion for Order of Contempt and Motion to Surcharge Debtors' Exemptions for Failure to Comply with Order for Turnover at 2, *in* Appellant's [sic] Appendix at 88.

that the bankruptcy court lacked authority to surcharge their exempt property, and that the bankruptcy court followed improper procedure in considering and issuing the Surcharge Order.[4]

## II. JURISDICTION

This Court has jurisdiction to hear timely appeals from final judgments, orders, and decrees of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the appeal heard by a district court.[5] Neither party elected to have this appeal heard by the United States District Court for Western District of Oklahoma.

■■■ A decision is considered final if it "disposes of a particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition."[6] In this case, the Surcharge Order ended the controversy of the Trustee's attempts to recover the Cheaters Funds. Thus, the Surcharge Order is a final order and the Court determines that jurisdiction over this appeal is appropriate.

## II. ANALYSIS

### A. Standard of Review

■■■ None of the factual determinations underlying the Surcharge Order are in

dispute. The Court will review the bankruptcy court's authority to issue the Surcharge Order under *de novo* review,[7] and will review the bankruptcy court's decision to apply that authority for an abuse of discretion.[8]

### B. Propriety of the Turnover Order

At the outset, the Debtors argue that the bankruptcy court abused its discretion in ordering them to turn over the income received from Cheaters because they believe that those funds are exempt. The Trustee argues that the Debtors are barred by the doctrine of Law of the Case from arguing their right to assert an exemption in the Cheaters funds. We agree.

■■■ Under the doctrine of Law of the Case, " '[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' "[9] "The doctrine applies to issues previously decided, either explicitly or by necessary implication."[10] A debtor's entitlement to an exemption is a question of law.[11]

---

**4.** The Debtors' Notice of Appeal refers to an order issued on October 17, 2006 requiring the "turnover of $17,424.75." Appellant's Appendix at 90. Because the original Turnover Order was issued on June 1, 2006, and the Debtors' Statement of Issues encompasses the merits of the Surcharge Order, the Court treats this appeal as relating to the Surcharge Order only, issued on October 24, 2006.

**5.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

**6.** *In re Am. Ready Mix, Inc.,* 14 F.3d 1497, 1499 n. 2 (10th Cir.1994) (internal quotation marks omitted).

**7.** *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).

**8.** *Nardei v. Maughan (In re Maughan),* 340 F.3d 337, 344 (6th Cir.2003).

**9.** *Concrete Works of Colo., Inc. v. City and County of Denver,* 321 F.3d 950, 992 (10th Cir.2003) (quoting *Capps v. Sullivan,* 13 F.3d 350, 353 (10th Cir.1993)).

**10.** *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9,* 10 F.3d 700, 705 (10th Cir.1993) (citation omitted).

**11.** *Fowler v. Shadel,* 400 F.3d 1016, 1017 (7th Cir.2005).

■ In the course of issuing the Turnover Order, the bankruptcy court implicitly determined that the Cheaters Funds were property of the estate and not exempt from the Trustee's administration in this case. The Debtors did not appeal the Turnover Order so the determination that the Cheaters funds were property of the estate became Law of the Case. The Debtors may not argue the merits of the legal determinations underlying the Turnover Order in this appeal.

## C. Election of Remedies Defense and Procedure of the Bankruptcy Court

■ The Debtors further argue that the Trustee is estopped from seeking turnover of the Cheaters Funds they received postpetition under the Election of Remedies doctrine. They argue that by demanding that Cheaters make payments to the Trustee, he may not choose a different remedy to enforce the Turnover Order. They also argue that the Surcharge Motion was procedurally faulty because the Trustee failed to serve a summons on the Debtors and their counsel and they contend service of a summons is required under Bankruptcy Rule 9014.

These issues were not raised by the Debtors in objecting to the Trustee's Surcharge Motion,[12] and they may not raise it for the first time on appeal.[13]

## D. Bankruptcy Courts Have Authority to Surcharge Exemptions

■ The crux of this appeal is whether the bankruptcy court had authority to issue the Surcharge Order. We hold that it did.

Under 11 U.S.C. § 704(1)[14], a Chapter 7 trustee is required to "collect and reduce to money the property of the estate...." Likewise, a Chapter 7 debtor is required to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title"[15] and "surrender to the trustee all property of the estate[.]"[16] Failure of the debtor to honor these responsibilities may lead to judgments against the debtor requiring turnover or barring the debtor's Chapter 7 discharge.[17]

To enforce these continuing obligations, a majority of courts hold that a bankruptcy court is empowered under § 105(a) to authorize the trustee to "surcharge" the debtor's exempt assets to compensate the

---

**12.** Whereas these arguments may have been raised orally below, the Debtors failed to provide the Court with a transcript of the hearing on the Surcharge Motion. *See* 10th Cir. BAP L.R. 8009–1(b)(5) ("The appendix must contain all transcripts, or portions of transcripts, necessary for the court's review."). Even if we were to address the merits of Debtors' arguments relating to Rule 9014, we would dismiss them outright. Rule 9014(b) requires service of a contested *motion* pursuant to Rule 7004. It does *not* require the service of a summons.

**13.** See *Walker v. Mather (In re Mather)*, 959 F.2d 894, 896 (10th Cir.1992); *Tele–Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir.1997) (citing *Anschutz Land & Livestock Co. v. Union Pac. R.R. C.*, 820 F.2d

338, 344 n. 5 (10th Cir.1987)) (Appellate courts "should not be considered a 'second shot' forum ... where secondary, back-up theories may be mounted for the first time.").

**14.** All statutory references herein are to the Bankruptcy Code, unless stated otherwise. Because the Debtors filed for Chapter 7 relief before October 17, 2005, the provisions of the Bankruptcy Code which apply in this case were those in effect before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**15.** 11 U.S.C. § 521(3).

**16.** 11 U.S.C. § 521(4).

**17.** See 11 U.S.C. § 727.

estate for property of the estate which the debtor refuses to surrender.[18] We agree. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 704 and 521 of the Bankruptcy Code require the debtor to turn over property of the estate to a Chapter 7 trustee. In authorizing a Chapter 7 trustee to enforce these obligations against exempt property, a bankruptcy court does nothing more than issue an order "that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.[19] To that end, courts issuing surcharge orders are not using Section 105(a) in the abstract to create new law, but are using it to augment those obligations found elsewhere in the Bankruptcy Code.[20]

The Court finds persuasive the analysis in *In re Mazon*, wherein the court explained that concealing and failing to turn over assets to a Chapter 7 trustee is tantamount to claiming an additional and unauthorized exemption "because the concealment and dissipation prevents administration of the assets by a trustee for the benefit of creditors."[21] The *Mazon* court reasoned that a court's ability to issue surcharge orders is necessary to "prevent what would otherwise be a fraud on the court and on creditors caused by the debtor's failure to schedule and turn over estate assets."[22]

As the Ninth Circuit Court of Appeals stated in *In re Latman*, authorizing a surcharge of exempt property is not punitive in nature.[23] Where a debtor deserves to be punished for failing to turn over property of the estate, a trustee should file an adversary proceeding to bar or revoke the debtor's discharge. The result of a judgment barring a debtor's discharge is that property of the estate is still subject to the trustee's administration and the debtor does not receive the benefit of a discharge.[24] But even when a debtor's dis-

---

**18.** *Latman v. Burdette,* 366 F.3d 774, 785–86 (9th Cir.2004); *In re Mazon,* 368 B.R. 906, 911, 2007 WL 1437370, at *4 (Bankr.M.D.Fla. May 11, 2007); *In re Koss,* 319 B.R. 317, 322–23 (Bankr.D.Mass.2005); *In re Hamblen,* 354 B.R. 322, 325–26 (Bankr.N.D.Ga.2006); *In re Karl,* 313 B.R. 827, 830 (Bankr.W.D.Mo. 2004).

**19.** A broad interpretation of the Supreme Court's recent decision in *Marrama v. Citizens Bank of Massachusetts,* —— U.S. ——, 127 S.Ct. 1105, 1112, 166 L.Ed.2d 956 (2007) further suggests that a bankruptcy court's authority under § 105(a) and general principles of equity is sufficient to issue orders (such as surcharge orders) necessary to avoid an abuse of the bankruptcy process. *See also* Christopher W. Frost, *Marrama v. Citizens Bank of Massachusetts: Strict Construction Versus Inherent Authority,* 27 No. 4 Bankr.Law Letter 1 (April 2007) ("Marrama may signify the Court's willingness ... to consider the systematic limitations of the ban ruptcy process and the authority of the bankruptcy judge to guard against its abuse.").

**20.** See *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (holding that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code).

**21.** *In re Mazon,* 368 B.R. 906, 909, 2007 WL 1437370, at *2 (Bankr.M.D.Fla. May 11, 2007)

**22.** *Id.* 368 B.R. at 910, 2007 WL 1437370 at *3. The Court notes that *Mazon* involved debtors who both concealed and failed to turn over property of the estate, whereas the Debtors in the present case disclosed the Cheaters Funds from the outset of their case. Despite this distinction, the Court believes the analysis in *Mazon* relating to a court's authority to issue a surcharge order is insightful and relevant to this case.

**23.** *Latman v. Burdette,* 366 F.3d 774, 785 (9th Cir.2004).

**24.** *Id.* at 783.

charge is revoked, the debtor is still required to surrender, and the trustee is still required to pursue, property of the estate. As such, revoking the debtor's discharge does little to benefit the estate. A debtor whose discharge is revoked is likely to be even more recalcitrant in responding to a trustee's efforts to recover property of the estate. In contrast, surcharging a debtor's exemption is aimed at the administration of the estate only, and does not punish the debtor.[25] In essence, surcharging the debtor's exempt property is a way to accomplish what the debtor was required to do in the first place—provide specific value to the estate. Where the property withheld by the debtor is definite, there is no reason why a court cannot reach that same amount of exempt property. As the *Latman* court recognized, to hold otherwise would allow the debtor a windfall in that the debtor's recalcitrance would grant the debtor an avenue to steal from the estate.[26] The debtor would leave bankruptcy with exempt assets *plus* the assets which he or she failed to turn over to the trustee. This result would be inequitable and at odds with specific provisions of the Bankruptcy Code. It is precisely the kind of situation § 105(a) was designed to remedy.

■■■ To that end, we agree with the holding of *Latman* and hold that a bank-ruptcy court may authorize a trustee to "surcharge" a debtor's exempt property to the extent necessary to make the estate whole where a debtor fails to turn over non-exempt property of the estate after being ordered to do so.[27] A bankruptcy court authorizing a "surcharge" need not make a finding of fraud or hold the debtor in contempt. Of course, a court's use § 105(a) is discretionary and equitable in nature,[28] so a "surcharge" should be authorized only where it is necessary to further the provisions of the Bankruptcy Code and where such an order is equitable.[29]

■■■ In this case, the bankruptcy court's Turnover Order implicitly found that the Cheaters Funds were property of the estate and not exempt, ordering the Debtors to turn those funds over to the Trustee. The Debtors failed to comply with the Turnover Order so the Surcharge Order ensued. From the record on appeal, we cannot say that the bankruptcy court abused its discretion in issuing the Surcharge Order.

■■■ The Debtors argue that even if the Surcharge Order was appropriate, it had the effect of a "double surcharge" because it required the Debtors to pay the taxes and fees associated with liquidating their exempt retirement accounts. We

25. *Id.* at 786 ("[S]urcharge may be the only means fairly to ensure that debtors retain their statutory 'fresh start,' while also permitting creditors access to property in excess of that which is properly exempted under the Bankruptcy Code.").

26. *Id.* at 785.

27. There may be other situations where a surcharge order would be appropriate, but we need not discuss those in this appeal.

28. See *U.S. v. Energy Res. Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir.2005) ("The equitable power conferred ... by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.") (quoting *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir.2003)).

29. We are aware that the *Latman* court pointed to a more definite two part test for authorizing a "surcharge," but the authority for this test is unclear. 366 F.3d at 786. Section 105(a) is at heart a provision based in equity. We see no reason to unnecessarily bind a court's discretion.

**354**

disagree. The goal of a surcharge is to make the estate whole for a debtor's failure to turn over property of the estate. The estate should be in the same position as it would have been if the debtor had timely complied with the trustee's turnover requests. In this case, if the estate was forced to pay the fees for liquidating the exempt retirement accounts, the estate would not be made whole. It would be compensated for the amount of the Cheaters Funds, but would be decreased by the amount of the fees and penalties incurred to liquidate the retirement funds.

▪ It may be argued that a debtor's exemptions are sacrosanct under cases such as *Taylor v. Freeland & Kronz*,[30] and that today's decision infringes on a debtor's right to protect exempt property.[31] We believe this argument goes too far. A debtor's right to exempt property from the bankruptcy estate is significant and should be protected by a bankruptcy court. But that right is not absolute. Bankruptcy courts may impact a debtor's exemption in a variety of contexts, such as attempts to conceal property[32] or where amendments to exemption claims are made in bad faith or prejudice third parties.[33] Unlike those situations, today's decision has only a minimal impact on a debtor's exemptions since it impacts the form but not the value thereof. Because a surcharge should only be for the value of property the debtor withheld from the estate, the debtor will leave the bankruptcy case with the property of the same value as if he had timely surrendered property of the estate and retained only exempt property.

▪ An argument might be made that the bankruptcy court lacked jurisdiction to issue the Surcharge Order because the funds in the retirement account may have never been property of the estate under *Patterson v. Shumate*.[34] The record on appeal does not indicate whether the Debtors' retirement account was qualified under the Employee Retirement Income Security Act ("ERISA"), nor did the Debtors argue this issue before the bankruptcy court or on appeal. They argue only that the retirement funds were exempt property. As such, the Debtors have waived their right to argue that the bankruptcy court lacked jurisdiction over the retirement account under *Patterson*.[35] To be sure, if the Debtors had argued this issue before the bankruptcy court and if the evidence on appeal established that the retirement account was ERISA qualified, our holding might be different. But without such arguments and facts before us, we can only conclude that the retirement account was exempt property—property that was initially property of the estate but then became exempt. This is an important distinction because bankruptcy courts have jurisdiction over exempt property but lack jurisdiction over property which was never property of the estate in the first place.[36] Since the Debtors argue only that the

**30.** 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

**31.** The Court notes that even the *Taylor* Court did not address whether a bankruptcy court may employ authority under § 105(a) to disallow a claimed exemption after the time period had expired to object to the claimed exemptions.

**32.** *In re Cogliano*, 355 B.R. 792 (9th Cir. BAP2006).

**33.** *In re Kaelin*, 308 F.3d 885 (8th Cir.2002).

**34.** 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

**35.** *See supra* n. 13.

**36.** *See In re Hamblen*, 354 B.R. 322, 329–330 (Bankr.N.D.Ga.2006); *see also Wal–Mart Stores, Inc. v. Carpenter (In re Carpenter)*, 245 B.R. 39, 52 (Bankr.E.D.Va.), aff'd, 252 B.R. 905 (E.D.Va.2000), aff'd, 36 Fed.Appx. 80 (4th Cir.2002) ("Although the exempt property is no longer property of the estate, the court still retains jurisdiction over the property[.]"); *In*

retirement funds are exempt property and do not address ERISA issues, we believe the bankruptcy court had jurisdiction to issue the Surcharge Order.

 Today's decision has less to do with the protections afforded a debtor's exemptions than it has to do with enforcing the provisions of the Bankruptcy Code and avoiding manipulation of the estate. As one court stated, "the purpose is not to 'punish' the debtor, but to reach an equitable result by preserving the spirit of the Bankruptcy Code and the creditors' reasonable expectations in the event of liquidation." [37] We are sensitive to the notion that bankruptcy courts have an obligation to protect a debtor's right to exemptions. In determining whether a surcharge is appropriate, bankruptcy courts should balance the concern for protecting exemptions with the need to enforce the debtor's responsibilities under the Code. We also recognize that the facts of each case will pose distinct and different concerns for a bankruptcy court. We hold that in this case the bankruptcy court did not abuse its discretion in determining that a surcharge was appropriate.

## IV. CONCLUSION

The decision of the bankruptcy court is AFFIRMED.

CLARK, Bankruptcy Judge, dissenting.

The majority has approved the creation of a new remedy for debtor misconduct—invading the Debtors' pension plan and exemptions. New remedies such as this should be created by Congress, not the courts.

I agree with the majority's opinion that the "Cheaters" stream of income is not exempt. I agree that the Turnover Order is a final order from which no timely appeal was taken, and I agree that the Trustee is not estopped from seeking alternative remedies. I disagree with respect to the "surcharge" of Debtors' exemptions.

### The Majority Should Not Use § 105 to Create a Remedy that is Unavailable Under § 522(c)

Section 522(c) of the Bankruptcy Code specifically defines the instances where a debtor's exempt property my be surcharged.[1] Failure to turnover property of the estate and failure to obey a court order do not fall within any of the enumerated sections of § 522(c). The majority should not be permitted to use § 105 to judicially amend § 522(c). Section 522(c) is a detailed and specific statute. Section 105 is a general statute. A precisely drawn, de-

re Stinson, 221 B.R. 726, 730 (Bankr. E.D.Mich.1998).

37. In re Karl, 313 B.R. 827, 831 (Bankr. W.D.Mo.2004).

1. The operation of § 522(c) is limited in scope and goes nowhere near as far as the majority proposes with the Surcharge Order. Section 522(c) provides that property exempted under § 522 is not liable during or after the case for any debt with the exception of debts arising under § 523(a)(1) or (5), debts secured by certain liens, a debt specified in § 523(a)(4) or (6) owed by an institution—affiliated party of an insured depository institution, or debts in connection with fraud in the obtaining of

student loans. Because the surcharge approved by the majority goes well beyond the remedy provided under § 522(c), the majority's opinion leaves § 522(c) creditors to look to the remains the debtor's exempt assets after the trustee has satisfied his surcharge. The surcharge will defeat the statutory treatment of § 522(c) creditors by reducing § 522(c) creditors to a second priority behind the trustee's surcharge. The "categorical reordering of priorities that takes place at the legislative level of consideration is beyond the scope of judicial authority." United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 229, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996).

tailed statute preempts more general remedies, and it braces the preemption claim when the general remedy extends the limits of the specific statute. *EC Term of Years Trust v. United States,* —— U.S. ——, 127 S.Ct. 1763, 1767, 167 L.Ed.2d 729 (2007). Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent. *TRW Inc. v. Andrews,* 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–617, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)).

### The Power of § 105 is Limited

The majority argues that § 105 authorizes the surcharge of Debtors' exempt property in order "to augment those obligations found elsewhere in the Bankruptcy Code." See Majority Opinion at 352. The word "augment" is defined to mean "[t]o make greater in size, number, amount, degree, etc.; to increase, enlarge, extend." *Oxford English Dictionary Online* (2007). Bankruptcy courts must use the equitable powers under § 105 within the confines of the Bankruptcy Code and must not increase, enlarge or extend those powers through judicial fiat. "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The majority cites at 352 n. 19 to *Marrama v. Citizen's Bank of Massachusetts,* —— U.S. ——, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (5–4 decision), for the proposition that general principles of equity are sufficient to issue the

surcharge order. *Marrama* does not go so far. The *Marrama* Court allows the use of § 105 to authorize the immediate denial of a motion to convert filed under § 706 in lieu of a conversion order "that merely postpones the allowance of equivalent relief[.]" 127 S.Ct. at 1112. *Marrama* does not increase, enlarge, or extend the power of § 105 beyond the confines of the Bankruptcy Code. What *Marrama* does is allow the use of § 105 to provide an immediate remedy as opposed to an equivalent, but postponed remedy.

### The Surcharge Fails the Latman Test

The majority identifies five published opinions to support the concept of surcharging a debtor's exemptions, and from that argues that "a majority of courts hold that a bankruptcy court is empowered under § 105(a) to authorize the trustee to 'surcharge' the debtor's exempt assets[.]" Majority Opinion at 351. Given the length of time that the Bankruptcy Code has been in existence and given the number of courts faced with situations where a debtor fails to turnover property of the estate, five opinions is hardly a majority. The majority's leading case, *Latman v. Burdette,* 366 F.3d 774 (9th Cir.2004), holds that a bankruptcy court "may equitably surcharge a debtor's statutory exemptions when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." [2] If the test defined in *Latman* is applied to the facts of this case, the surcharge of Debtors' exempt assets would be prohibited.[3]

---

**2.** *Id.* at 786.

**3.** Under *Latman,* a surcharge of the debtor's exempt assets is only permissible when it is necessary to ensure that the debtor exempts an amount no greater than what is permitted

by the exemption scheme of the Bankruptcy Code. In the present case, no one is suggesting that the exemptions to be surcharged are excessive.

### Other Remedies are Available

Congress created a variety of remedies to deal with situations where a debtor fails to turnover property of the estate or fails to obey a court order. A trustee has turnover powers under § 542, a trustee is vested with certain rights and avoiding powers under § 544, a trustee may avoid preferences under § 547, fraudulent transfers under § 548, postpetition transfers under § 549, and transfers to third parties under § 550. A trustee may bring an action under § 727 to have the debtor's discharge denied or revoked.[4] If a trustee believes that a bankruptcy crime has been committed, the trustee is duty bound under 18 U.S.C. § 3057 to report the facts and circumstances to the United States Attorney for criminal prosecution. Section 523(a)(13) specifically carves out any order of restitution issued under Title 18 of the United States Code from a debtor's discharge. Congress knew how to fashion remedies for the estate, and chose not to surcharge a debtor's exempt assets as a remedy for the failure to turnover property or the failure to obey a court order. A trustee is armed with a panoply of remedies under the existing Bankruptcy Code. Where an alternate remedy exists at law, equitable relief is not available. *Switzer v. Coan*, 261 F.3d 985, 991 (10th Cir.2001). It is fundamental that equity will not grant relief if the complaining party has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action. *Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir.1970). Here, there is no evidence in the record that the Trustee made any effort to diligently recover the stream of income until some five months after the petition date. The equitable powers of the court should not be utilized to save a less-than-diligent trustee from the consequences of his errors.

Another remedy is available to compensate this estate for its loss. The Debtors filed Chapter 7 bankruptcy on October 14, 2005. With the filing, the Debtors disclosed their interest in the Limited Partnership in the Cheaters television show, and they disclosed a monthly income ranging from $700.00 to $1,700.00 from the limited partnership. The Debtors did not claim the proceeds to be exempt in the original schedules or statements. For reasons unknown and unexplained in the record, with full knowledge that the Debtors were receiving, and not turning over, between $700.00 and $1,700.00 per month in nonexempt income, the Trustee failed to timely object to, or seek an extension of time to object to, the Debtors' discharge[5] under § 727. Even more inexplicably the Chapter 7 Trustee failed to file a motion for turnover of the proceeds until late March 2006, more than 5 months after the petition date.[6] It is the trustee's duty to collect and reduce to money the property of the estate and to close the estate as expeditiously as is compatible with the best interests of the parties. For a Chapter 7 trustee to fail to take action to collect a stream of nonexempt income for over 5 months smacks of dereliction and invites a further inquiry. Certainly, fault lies with the Debtors, but to the extent that the

---

**4.** Perhaps the majority is suggesting to the lower courts that a "surcharge" is available where it is easier than the statutory remedies.

**5.** The deadline for filing complaints objecting to the Debtors' discharge was February 13, 2006. Debtors received their discharge on March 7, 2006.

**6.** Nowhere in the Trustee's Motion for Turnover, and nowhere in the Trustee's Motion for Surcharge, does the Trustee allege that he made any demand that the Debtors turnover the income stream prior to the March, 2006 Turnover Motion.

Trustee contributed to this problem, the Trustee should contribute to the solution-with cash.[7] It seems rather disingenuous for the Trustee to seek an "equitable" remedy from the court, given the facts of this case and the apparent failings by the Trustee.

### Courts May Not Equitably Surcharge a Debtor's Pension

Equitable grounds are insufficient to support the surcharge of a debtor's pension[8]—even a debtor who has misbehaved. See Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Guidry was the chief executive officer of the Sheet Metal Workers International Association, Local 9 (the "Union"), and a trustee of the Union's pension fund. Guidry's employment made him eligible to receive benefits from the Union pension funds. Guidry embezzled substantial sums of money[9] from the Union. After discovery of the embezzlement, Guidry stipulated to a judgment of $275,000.00 against himself and in favor of the Union. Eventually, Guidry plead guilty to embezzling more than $377,000.00 and began serving a prison sentence. While still incarcerated, Guidry filed a complaint against the Union alleging that the Union had wrongfully refused to pay him the pension benefits to which he was alleged to be entitled. The Union, among other things, argued that Guidry breached his fiduciary duty owed to the Union, and that the Union was entitled to various remedies under the theories of conversion, fraud, equitable restitution, and constructive trust. It argued that Guidry forfeited his right to receive benefits as a result of his criminal misconduct, and that if Guidry were found to have a right to benefits, those benefits should be paid to the Union rather than to Guidry. The dispute between Guidry and the Union involved two pools of money. One pool of money consisted of Guidry's interest in the Union's ERISA qualified pension plan and payable to Guidry over the term of his retirement (the "Plan Funds"). The other pool of money consisted of funds paid to Guidry from the pension plan and held in Guidry's personal bank account (the "Bank Account Funds"). The Bank Account Funds had not been commingled with other funds and were claimed exempt by Guidry under state law.

In ruling that because the Union's claims did not override ERISA's anti-alienation provisions, the Court reasoned that were it to accept the Union's position, ERISA's anti-alienation provision would be inapplicable whenever a judgment creditor relied on the remedial provisions of a federal statute, and that such an approach would eviscerate the protections of ERISA's prohibition on assignment or alienation of pension benefits.[10]

---

7. Pursuant to Bankruptcy Rule 2010, all trustees must carry a bond conditioned upon the faithful performance of the trustee's official duties.

8. It is not clear from the record whether or not the Debtors' pension plans are ERISA qualified or whether they contain anti-assignment or anti-alienation provisions. For purposes of this argument, it is assumed that the Debtors' pension plans are ERISA qualified plans, or contain anti-assignment or anti-alienation provisions.

9. An audit indicated that over $998,000.00 was missing from the Union funds.

10. If an ERISA qualified plan's anti-assignment provision is violated by payment directly to a trustee, the plan may lose both its ERISA qualification and its tax exempt status. See McLean v. Cent. States, Se. & Sw. Areas Pension Fund, 762 F.2d 1204, 1206 (4th Cir. 1985); see also Anderson v. Raine (In re Moore), 907 F.2d 1476, 1480–81 (4th Cir. 1990) ("[A] plan's ERISA-qualification and tax exempt status depend on compliance with

With respect to the Union's equitable arguments, the Court stated, at 493 U.S. at 376–377, 110 S.Ct. 680 (footnote omitted), that:

> Nor do we think it appropriate to approve any generalized equitable exception-either for employee malfeasance or for criminal misconduct-to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
>
> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be 'especially' inequitable. The impracticability of defining such a standard reinforces our conclu-

sion that the identification of any exception should be left to Congress.

Pension funds that are protected by anti-alienation or anti-garnishment provisions are not available for surcharge. "Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar." *Patterson v. Shumate*, 504 U.S. 753, 759, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (citing *Guidry*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782).

### Courts May Not Equitably Surcharge a Debtor's Exemptions

The question with respect to the "Bank Account Funds" which was not addressed by the Court in *Guidry*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782, was later taken up by the Tenth Circuit Court of Appeals in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078 (1994) (rh'g en banc). The dissent is noteworthy because it reminds us that even courts of equity must follow the law, and must not be permitted the luxury of creating their own remedies in the name of equity. The dissent states at 39 F.3d at 1087:

> The rain it raineth on the just And also on the unjust fella: But chiefly on the just, because The unjust steals the just's umbrella.
>
> Charles Bowen, Thad Stem Jr., and Alan Butler, *Sam Ervin's Best Short Stories*, (1973).
>
> The majority today has ruled that a thief is free to keep the fruits of his crime under Colorado law.

The dissent goes on at 39 F.3d 1089 (footnote omitted) to argue that:

> The majority has concluded a faithless servant, an embezzler, a man who steals from the hard earned labors of the

the anti-assignment provisions in 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1).").

workers, is entitled to keep the fruits of his crime. I do not believe the Colorado legislature or the Colorado courts would permit such an unconscionable result. It is nonsensical to assume Colorado would want a thief to keep ill-gotten gains. Like Mr. Bumble of *Oliver Twist,* I believe "[i]f the law supposes that ... the law is a ass—a idiot," and I am not willing to believe Colorado law to be either.

Despite a vigorous dissent, the majority found Guidry's Bank Account Funds to be exempt under the Colorado exemption statute. The majority's ruling was in keeping with the rule that exemptions must be construed liberally and it is assumed that, in the absence of specific language in the statute limiting the extent of an exemption, the legislature did not intend to impose a limitation. Under *Guidry,* the law of this Circuit is that absent specific statutory language to the contrary, state exemption law will not be limited regardless of the equities of the case.

### The Surcharge of Debtors' Exemptions Impermissibly Invades State Law

When enacting the bankruptcy laws under Title 11 of the United States Code, Congress chose not to preempt state exemption law. In fact, Congress did the opposite. Congress gave the decision to the individual states concerning which exemptions may be elected by their citizens. The State of Oklahoma opted out of the federal exemption list pursuant to § 522(b)(1). The exemptions that the majority would permit to be surcharged are exemptions enacted by the State of Oklahoma for the people of Oklahoma. The Bankruptcy Court for the Western District of Oklahoma lacks the power to modify Oklahoma state law.

The majority supports its decision to allow the surcharge of the Debtors' state law exemptions citing to the broad equitable powers of 11 U.S.C. § 105. Even the broadest possible reading of § 105 cannot be interpreted to preempt Oklahoma's exemption laws. Federal law preempts state law in three circumstances: (1) when Congress explicitly defines the extent to which the enacted statute preempts state law, (2) when state law actually conflicts with federal law, or (3) when state law attempts to regulate conduct in a field that Congress intended the Federal Government to occupy exclusively. *United States v. Wagoner County Real Estate,* 278 F.3d 1091, 1096 (10th Cir.2002). In any preemption analysis, congressional intent is the ultimate touchstone. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers. *Midlantic Nat'l Bank v. N.J. Dep't Envtl. Prot.,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Because 11 U.S.C. § 105 does not preempt Oklahoma's exemption laws, the Bankruptcy Court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule. *Johnson v. Riddle,* 305 F.3d 1107, 1118 (10th Cir. 2002).

### Oklahoma State Law Prohibits the Surcharge of Exemptions

Bankruptcy courts must resort to state law for interpretation of state exemption rights. *In re Duncan,* 329 F.3d 1195, 1198 (10th Cir.2003). In Oklahoma, a debtor's exemptions cannot be surcharged for the payment of any debt.[11] As with most

11. For example, Oklahoma's statutory homestead provision, Oklahoma Statutes title 31 § 1, states in part: "... the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale

states, Oklahoma has long construed its exemptions laws in a liberal manner.[12] "We have liberally construed our homestead exemption in the interest of the family home." *State of Okla. v. Ten (10) Acres of Land*, 877 P.2d 597, 601 (Okla.1994) (citing *First Nat'l Bank v. Burnett*, 122 Okla. 255, 254 P. 95, 96 (1927)). "Each member of the family residing upon the homestead and in good faith making it a home is equally protected by the statute, and has such an interest as will prevent its forcible seizure for the debts or liabilities of either." *Cassady v. Morris*, 19 Okla. 203, 91 P. 888, 890 (1907). In ruling that property protected by Oklahoma's exemption laws were not subject to forfeiture under Oklahoma's Uniform Controlled Dangerous Substance Act, the Supreme Court of Oklahoma stated that "[w]e believe that the intent of our homestead exemption statutes was primarily protection of the homestead. We cannot find that the intent of Oklahoma's homestead exemption statute is to apply only to forced sales for the payment of debts and not otherwise." *State of Okla. v. Ten (10) Acres of Land*, 877 at 601. In a case certified[13] by the United States Bankruptcy Court for the Western District of Oklahoma, the Supreme Court of Oklahoma stated that "we are committed to the rule that statutes exempting property from forced sale for the payment of debts are to be given a reasonable construction to effect their intent and purpose. In cases of doubt, the doubt will be resolved in favor of the exemption." *In re Anderson*, 932 P.2d 1110,

1112 (Okla.1996). Bankruptcy courts must interpret state exemption laws under the state's rules of statutory construction. *In re Hodes*, 308 B.R. 61, 68 (10th Cir. BAP2004). In another case certified by the United States Bankruptcy Court for the Western District of Oklahoma, the Supreme Court of Oklahoma ruled that:

> Because Oklahoma has opted out of the federal scheme, debtors are limited to the exemptions provided under state law. Exemptions are intended to provide debtor's [sic] with sufficient assets for a fresh start and to keep bankrupts from becoming a charge on society.... It is our duty to give effect to legislative acts, not to amend, repeal or circumvent them.

*In re Alexander*, 980 P.2d 659, 664–665 (Okla.1999) (footnotes omitted).

In a State where even its own drug forfeiture laws cannot defeat a debtor's claimed exemptions, it is highly unlikely that the Supreme Court of Oklahoma would permit a court, in the name of equity, to fashion a generalized remedy that would amend, repeal, or circumvent the exemption laws of the State of Oklahoma.

### *The Majority Cannot Do Indirectly That Which Is Prohibited Directly*

The Trustee, by seeking to surcharge the Debtors' exemptions is, in essence, objecting to and seeking to disallow the Debtors' claimed exemptions. The Trustee's time for objecting to the Debtors'

---

for the payment of debts, except as herein provided[.]"

**12.** This same liberal approach is shared by the Bankruptcy Appellate Panel of the Tenth Circuit. "When interpreting exemption statutes, the interpretation must further the spirit of such laws. Specifically the court must be guided by the general principle that exemption statutes are to be liberally construed so as to effect their beneficent purposes." *In re*

*Bechtoldt*, 210 B.R. 599, 601 (10th Cir. BAP1997) (citing *In re Pancratz*, 175 B.R. 85, 93 (D.Wyo.1994)).

**13.** Certification to a state's Supreme Court is appropriate where the proceeding involves important questions of state law. *Swink v. Sunwest Bank (In re Fingado)*, 955 F.2d 31, 33 (10th Cir.1992).

exemptions expired, and the Trustee should not be entitled to now object to the Debtors' exemptions on equitable grounds or on any other grounds. Without a timely objection, even claimed exemptions that have no basis in state law cannot be denied. *In re Coones*, 996 F.2d 250, 251 (10th Cir.1993). The United States Supreme Court in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 645, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), states that "[w]e have no authority to limit the application of § 522(*l*) to exemptions claimed in good faith." Likewise, bankruptcy courts have no authority to limit the application of § 522(*l*) to exemptions on equitable grounds.

### Lack of Jurisdiction

To the extent that the bankruptcy court's Surcharge Order purports to be a judgment [14] against the Debtors' pensions, the bankruptcy court lacks jurisdiction because there is no evidence that the plan administrator has ever been served with process or even provided with notice of the surcharge action. A retirement fund, being a trust instrument, is a separate legal entity and is entitled to due process of law.[15] Before a federal court can assert personal jurisdiction over a defendant, the court must determine whether the exercise of jurisdiction comports with due process. Service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir.2000). There is nothing in the record that shows service of

process upon the pension plan has ever been obtained. There is nothing in the record that shows the bankruptcy court ever obtained jurisdiction over the corpus of the pension plan. These inquiries must be satisfied before the Surcharge Order with respect to the pension plan can be allowed to stand.

### Conclusion

This Dissent argues several independent reasons why the Surcharge Order must not stand. I would REVERSE.

---

**14.** If the Surcharge Order does nothing more than give permission to the Trustee to sue the Debtors' pension plan, the order is meaningless. A trustee always has the duty to collect and liquidate property of the estate, and does not need a court order to do so. The automatic stay does not prevent a trustee from prosecuting any of the estate's legal rights.

*In re Lyngholm*, 24 F.3d 89, 92 (10th Cir. 1994).

**15.** Due process requirements apply equally to bankruptcy proceedings. *Bank of Marin v. England*, 385 U.S. 99, 102, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).